334 So.2d 582 (1976)
SCHOOL BOARD OF MARION COUNTY, Florida, Relator,
v.
PUBLIC EMPLOYEES RELATIONS COMMISSION, Respondent.
No. 48681.
Supreme Court of Florida.
June 16, 1976.
John P. McKeever, of Pattillo, MacKay & McKeever, Ocala, for relator.
Gene L. Johnson and Rodney W. Smith, Tallahassee, for respondent.
Joseph H. Williams, of Troutman, Parrish & Weeks, Orlando, for International Brotherhood of Painters and Allied Trades, District Council 66, intervener.
Sidney L. Matthew, of Tobias Simon and Elizabeth duFresne, Miami, for Florida Education Association/United, amicus curiae.
ENGLAND, Justice.
By petition for a writ of mandamus we have before us the question of whether the Public Employees Relations Commission has a statutory duty to allow examination of union authorization cards signed by public employees. We have original jurisdiction pursuant to Article V, Section 3(b)(5) of the Florida Constitution.[1]
District Council No. 66 of the International Brotherhood of Painters and Allied Trades filed with the Commission a petition for certification as bargaining agent for certain employees of the School Board of Marion County. The petition was accompanied by dated authorization cards signed by at least 30% of the employees in the proposed bargaining unit, as required by Section 447.307(2), Florida Statutes *583 (1975). Ten days later the School Board wrote the Commission denying that the petition was supported by 30% or more of the Council's employees and requesting access to the authorization cards. No reasons for the denial or the request were expressed.
The Commission refused access "because of the need for employee confidentiality in representation matters," stating that the staff of the Commission "assumes the responsibility of checking the petitions for a valid showing ... [and] this determination is both thorough and confidential." The School Board then invoked our jurisdiction, requesting a writ of mandamus directed to the Commission, and we issued our alternative writ.
The School Board argues that Sections 447.307(2) and 119.01, Florida Statutes (1975), give employers an absolute right to review authorization cards. Section 447.307(2) provides in relevant part:
"Any employee, employers, or employee organization having sufficient reason to believe any of the employee signatures were obtained by collusion, coercion, intimidation, or misrepresentation or are otherwise invalid shall be given a reasonable opportunity to verify and challenge the signatures appearing on the petition."
Section 119.01 is the public records law of Florida, which declares that all documents received by a public agency "shall at all times be open for a personal inspection by any person."
The Commission takes the postition that a review of authorization cards is permissible only where factual proof of collusion, coercion, intimidation, misrepresentation or invalidity is placed before the Commission and an independent investigation by the Commission does not disprove the assertions. The Commission bases its argument on labor policies developed under the National Labor Relations Act[2] and the public employee relations statutes of other states. It contends that no other jurisdiction permits employer access to authorization cards under these circumstances, for the policy reason that disclosure might enable employers and competing unions to make reprisals and, indirectly, "chill" the exercise of collective bargaining rights by employees.[3] With respect to the public records law, the Commission contends that collective bargaining rights of employees, which are guaranteed by the Constitution,[4] operate in an area exempt from the public records law by public policy.[5]
We cannot agree with the Commission's position. There is one major and controlling difference between the use of authorization cards by the National Labor Relations Board and other states, and their use in Florida. The National Labor Relations Board has itself established a 30% representation requirement relative to union petitions for Board elections in order to *584 screen frivolous petitions and to conserve the Board's resources.[6] This is not a requirement of law[7] and it does not involve "an element in determining whether or not a question of representation exists."[8] Section 447.307, in contrast, embraces more than a rule of administrative convenience in the scheme of public employee collective bargaining. It is a comprehensive statement of the procedures and rights guaranteed when an employee organization seeks certification as a bargaining representative. Subsections (2) and (3) govern those cases where the public employer refuses to recognize an employee organization, affording the organization recourse to the Commission for a supervised election. In those situations a prerequisite of law is the employee organization's showing that it has been selected by at least 30% of the employees in the proposed unit. Proof of representation is submitted in the form of authorization cards filed with the petition for recognition, and the Commission then has a duty to investigate the petition and verify the cards. If that investigation reveals the petition is deficient the matter ends. But if the petition is sufficient then a hearing must be held at which the employer can contest the petition, including the validity of the authorization cards. In this context, subsection (2) gives the public employer the right to "verify and challenge the signatures" on the authorization cards if it has "sufficient reason to believe" that the signatures are invalid or were improperly obtained. If the challenge is found to be without merit, an election can be held. But the requirement of a hearing allows the issue of representation to be tested in public, on a record, and by the presentation of evidence.
As we view the statute, the right of challenge would be meaningless if an employer who alleges one of the statutory grounds for invalidation is denied access until the hearing is held.[9] The pre-hearing right of access is not, however, an invitation to potential abuse or coercion, and it may not be employed for the purpose of producing the chilling effect to which the Commission alludes. Under the legislative scheme, it appears to have been recognized that some public employers, competing employee organizations or individual employees might abuse a right of access. The Legislature protected against this in two ways.
First, the Legislature limited access to those cases where the requesting party has reason to believe that employee signatures were obtained by "collusion, corecion, intimidation, or misrepresentation or are otherwise invalid." The set of circumstances are narrow indeed.[10] Second, the Commission *585 has been given the power to remedy abuses of the right of access. Sections 447.501(1)(a), (1)(b), (2)(a), (2)(b), and (2)(d), Florida Statutes (1975), delineate unfair labor practices that would occur in the event an employer or competing employee organization seeks access to signature cards in bad faith or abuses the exercise of that right in order to chill an employee's associational rights. Where lesser remedies are insufficient, bargaining orders may provide a full remedy. Cf., NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969).[11]
In sum, we find that the statute here is quite different from that in other jurisdictions, and that the Legislature has not ignored the asserted evils which prompted the Commission's action in this case. We understand the statute to mean that a public employer's good faith allegation of one of the grounds enumerated in the statute is sufficient to require the Commission to give access to the authorization cards, and that the Commission is not authorized to review or test the employer's judgment or assertions at that stage of the proceedings.
In the present case, however, we find that the School Board did not specifically allege any of the grounds enumerated in the statute. Its request was, therefore, properly denied by the Commission. For this reason the petition for a writ of mandamus must be denied, without prejudice to the School Board's right to renew its request in a proper form if it has "sufficient reason" and in good faith believes that the accumulation of employee signatures was improper for one of the enumerated reasons.
The other issues raised by the parties are without merit, and the alternative writ of mandamus is discharged.
OVERTON, C.J., and ROBERTS, BOYD and SUNDBERG, JJ., concur.
NOTES
[1] The Commission is a state agency created, among other reasons, to resolve controversies concerning claims for recognition as a bargaining agent for a bargaining unit of public employees. Chapter 74-100, Laws of Florida, appearing as Part II, Chapter 447, Fla. Stat. (1975). See specifically § 447.207(6), Fla. Stat. (1975).
[2] 29 U.S.C. §§ 151-167 (1970).
[3] See S.H. Kress, 137 NLRB 1244, 50 LRRM 1361 (1962). These views are also expressed in advisory letters to the Commission from public employee relations boards in the states of Hawaii, Michigan, New Jersey, New York, Oregon and Wisconsin, which have been made part of the record. In its brief, the Commission describes the chilling effect in these terms. "If an employee knows at the inception of the organizational campaign that his name and desires for collective representation will be exposed to public scrutiny, public ridicule, or more basic, reprisal from an employer, he may choose to forego or curtail the exercise of his constitutional right rather than submit to such pressures."
[4] Art. I, § 6, Fla. Const.
[5] The public records law contains no express exemption relative to collective bargaining. Section 119.07(2)(a), Fla. Stat. (1975), however, provides:

"All public records which presently are provided by law to be confidential or which are prohibited from being inspected by the public, whether by general or special law, shall be exempt from the provisions of subsection (1)."
[6] See NLRB v. J.I. Case Co., 201 F.2d 597 (9th Cir.1953).
[7] Compare 29 U.S.C. § 159 (1970), with § 447.307(2), Fla. Stat. (1975).
[8] NLRB v. J.I. Case Co., fn. 6 above. See also NLRB v. White Constr. & Engin. Co., 204 F.2d 950 (5th Cir.1953); Kearney & Trecker Corp. v. NLRB, 209 F.2d 782 (7th Cir.1953). The reasoning of the National Labor Relations Board in requiring secrecy at that state of the proceeding points up the difference between national procedures and Florida's. The Board has indicated that employers have no legitimate interest in the union's preliminary show-of-interest because "[i]t is the election, not the petitioner's showing of interest, which decides whether the employer is obligated to recognize the petitioner as the exclusive bargaining representative of the employees." S.H. Kress, fn. 3 above, at 1249. In contrast to that reasoning, Florida's statute has expressly conferred on employers a legitimate interest, in certain circumstances, at the petition stage.
[9] The pre-hearing accumulation of facts by the employer is consistent with the fact that the statute does not authorize the Commission to review the sufficiency of the employer's belief or require factual allegations in support of the asserted ground of invalidity. The employer's right is premised on its "having sufficient reason" to request verification.
[10] The statute does not provide free public access to signature cards, but rather limited access to a narrowly defined class of interested persons. To this extent Section 447.307 (2) may actually operate as an exemption to Section 119.01, as recognized in Section 119.07 (2)(a). In light of the manner in which we have construed Section 447.307(2), we are not required in this proceeding to determine whether or to what extent the public records law has been amended by Chapter 74-100, Laws of Florida.
[11] Should practical experience under the statute show that it does in fact abridge the collective bargaining rights guaranteed in Article I, Section 6 of the Florida Constitution, the courts are available to enforce constitutional rights.