**KEARNEY & TRECKER CORP.**

v.

**NATIONAL LABOR RELATIONS BOARD.**

No. 10789.

United States Court of Appeals Seventh Circuit.

Nov. 16, 1953.

Robert N. Denham, Washington, D. C., Leon B. Lamfrom, Milwaukee, Wis., for petitioner.

David P. Findling, Associate General Counsel, Duane Beeson, Attorney, National Labor Relations Board, Washington, D. C., for respondent.

Sydney M. Eisenberg, Max Raskin, Milwaukee, Wis., for Independent Union.

Before MAJOR, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

This case is here on the petition of Kearney & Trecker Corporation (hereinafter referred to as petitioner or the company), to review and set aside an order of the National Labor Relations Board (hereinafter referred to as the Board), issued against it on December 31, 1952, following proceedings under Section 10(c) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq. The Board's answer requests enforcement of its order. The unfair labor practice found arises from the company's refusal to recognize and bargain with Local 1083, International Union, United Automobile, Aircraft & Agricultural Implement Workers of America, CIO (hereinafter referred to as the CIO union or Local 1083), following its certification by the Board as exclusive bargaining representative of the company's employees.

Petitioner, before the Board and here, defends its refusal to bargain with Local 1083 on the ground that the Board's certification of that Local was invalid. The position of the company was and is that the election in which its employees selected Local 1083, and upon the basis of which the Board issued the certification, should not have been held because of the existence of an unexpired contract between the company and the Employees Independent Union, affiliated with the Confederated Unions of America (hereinafter referred to as the EIU), that the election was contaminated with fraud and therefore void, and that there was a wilful neglect and refusal by the officials of the Board's Chicago office to

conform both to statutory law and the Board's published Statements of Procedure in their entertainment and investigation of the petition in the representation proceeding, case No. 13–RC–1900.

There has been filed in this court, purportedly in compliance with Section 10(f) of the Act, a "transcript of the entire record in the proceeding, certified by the Board, including the pleading and testimony upon which the order complained of was entered, and the findings and order of the Board." We say purportedly because, as subsequently shcwn, it is the contention of petitioner that the Board has failed and refused to certify the "entire record in the proceeding". This contention relates in particular to the alleged refusal and failure of the Board to certify the complete record in the representation proceeding conducted under the authority of Section 9 of the Act. It may be noted that the proceedings in a representation proceeding and the action of the Board relative thereto are not subject to review until and if there is a petition by the Board under Section 10(e) for an enforcement of its order or a petition by an aggrieved person under Section 10(f), seeking its modification or vacation.

We are faced in the beginning with the troublesome and important contention advanced by petitioner that the Board has failed and refused to comply with its statutory duty to certify the "entire record in the proceeding," with the request that the Board be required to expand the record as filed in this court or, in the alternative, that the cause be remanded to the Board with directions that it do so. The instant record, as certified by the Board, contains the petition filed with its Chicago office by Local 1083, in conformity with Section 9(c); a transcript of the hearing had thereon; the decision of the Board, predicated upon such hearing, that an election be held; the result of the election showing that Local 1083 in a contest with EIU received 752 votes while the latter received 588 votes, and the certification of Local 1083 as the bargaining representative for petitioner's employees.

Petitioner in its motion for expansion of the record and its argument in support thereof, in reality seeks to have included in the record all information, in whatever form, acquired by the Board or its agents in the representation proceeding which caused or induced it to provide for a hearing on the petition which had been filed by Local 1083. Specifically it is sought to have included in the record, in addition to what is presently contained, the initial investigation on the interest of the union petitioner (Local 1083), the employees covered by the union sought to be represented, the report and analysis of the hearing officer made to the Board as provided for in Sec. 101.20(c) of the Statements of Procedure, reports by agents and investigators concerning the appropriate unit, the existence of other labor organizations as bargaining representatives and the existence of a written contract between the employees and EIU which would preclude proceedings on the petition filed by Local 1083.

This court, on April 1, 1953, entered an order directing that the record be expanded, as requested by petitioner's motion. Upon further consideration, however, this order was, on May 5, 1953, vacated, without prejudice to petitioner's right to renew the motion at the hearing on the merits of the petition to review. At the latter hearing this court concluded that petitioner's motion should be disposed of in advance of a hearing upon the merits of the company's petition to set aside and vacate the Board's unfair labor practice decision. Both Local 1083 and EIU have been permitted to intervene and file briefs, the former naturally aligning itself with the Board in opposition to the motion and the latter with the company in support of the motion. Numerous and extensive briefs have also been filed by both the petitioner and the Board. In fact, without discouragement from

the court because we were anxious to get all possible light on the issue, we have well near been overwhelmed with briefs. Any attempt to follow the many theories advanced pro and con relative to the construction and effect to be given to the statute and the Board's Statements of Procedure, as well as the legislative history of the Act and the purposes sought to be achieved, would unduly prolong this opinion. After giving careful consideration to all the theories and arguments advanced, we have reached the conclusion, admittedly contrary to our first impression, that petitioner's motion must be denied.

The relevant provisions of the Act are subsections (c) and (d) of Section 9. The former, so far as presently pertinent, reads as follows:

"(c)(1) Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board—

"(A) by an employee or group of employees or any individual or labor organization acting in their behalf alleging that a substantial number of employees (i) wish to be represented for collective bargaining and that their employer declines to recognize their representative as the representative defined in subsection (a) of this section * * * the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, *who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing* that such a question of representation exists, *it shall direct an election by secret ballot* and shall certify the results thereof." (Emphasis supplied.)

▪ This is the only statutory provision with which the Board need be concerned at the inception and during the progress of a representation proceeding. Of the numerous commands contained in this subsection, there are two which we regard as highly relevant to the question before us. They are (1) that the hearing officer "shall not make any recommendations with respect thereto" (that is, the hearing which has been had), and (2) that the Board shall direct an election by a secret ballot and shall certify the results thereof if it "finds upon the record of such hearing that such a question of representation exists". Thus, it appears self-evident that the Board in making its decision in a representation proceeding would be without authority, even if it desired to do so, to rely upon information which it or its employees might have received or obtained prior to and which resulted in causing it to provide for a hearing. This is so for the reason, as stated, that the Board is commanded to make its decision from what it finds "upon the record of such hearing".

If the section lastly referred to stood alone in the Act, there certainly could be no basis for petitioner's instant contention. Petitioner's entire argument, however, is grounded upon Section 9(d), which reads as follows:

"(d) Whenever an order of the Board made pursuant to section 10 (c) is based in whole or in part upon facts certified following an investigation pursuant to subsection (c) of this section and there is a petition for the enforcement or review of such order, such certification *and the record of such investigation* shall be included in the transcript of the *entire record* required to be filed under section 10(e) or 10 (f), and thereupon the decree of the court enforcing, modifying, or setting aside in whole or in part the order of the Board shall be made and entered upon the pleadings, testimony, and proceedings set forth in such transcript." (Emphasis supplied.)

The emphasized language is that relied upon by petitioner. We think it is

plain that no significance attaches to the words "entire record," because evidently they refer to the record required in a proceeding following the finding of an unfair labor practice. It is the theory of petitioner that the "record of such investigation" required to be included in the transcript includes not only the "record of such hearing" provided in Section 9(c), but all that transpired before the Board, its agents and employees after the filing of a petition under 9(c) and prior to its determination to provide for a hearing.

It appears, as pointed out by petitioner, that each step taken under 9(c) has been referred to as a part of the investigation; in fact, the Board in its Statements of Procedure Sec. 101.20(b) refers to the hearing therein provided as "part of the investigation." See also discussion in Inland Empire District Council v. Millis, 325 U.S. 697, 706, 65 S. Ct. 1316, 89 L.Ed. 1877. Thus, a literal acceptance of the language of 9(d) relied upon by petitioner affords colorable support to its contention, because if each of the steps taken under 9(c) is a part of the investigation, there is furnished the basis for the contention that the "record of such investigation" would include all that took place relative to each step taken under 9(c). At the same time, a literal acceptance of the language in 9(d) upon which petitioner relies would, in our judgment, bring it into hopeless and irreconcilable conflict with the provisions of 9(c). At any rate, such a literal acceptance would create a situation of futility by bringing before the Board and a reviewing court a record containing material which could not be utilized. This is so because, as shown, the Board is required under 9(c) to base its decision upon the record of the hearing therein provided. Obviously, there could be no point in requiring the Board to augment its record by the inclusion of material which it is not required by 9(c) to consider in making its decision on the question of representation. And it appears equally obvious that material in a record before a reviewing court, which the Board in the first instance was not required to consider, could serve no purpose.

We think there is much significance to be attached to the fact that Congress in 9(c) made no requirement that the Board make or keep a record of its preliminary investigation. Moreover, it specified nothing as to the mode or manner by which such investigation should be conducted. It was only when the Board had "reasonable cause to believe" that it was required to take the next step. The manner and mode of conducting this preliminary investigation is, in our judgment, a matter solely within the province of the Board. At that stage the proceeding was non-adversary. No party other than the petitioning union had a right to be heard or considered, and the "reasonable cause" which the Board was required to entertain could not impinge the rights or bind any other party. At that stage, neither petitioner nor the EIU could with any plausibility assert that they had been deprived of due process. It was only when the Board decided to take the next step, that is, to provide for an "appropriate hearing," that they came into the picture. And such hearing could be had only "upon due notice." At that hearing all interested parties, including petitioner and the competing union, were entitled to make an issue of any relevant matter and to offer testimony thereon. More specifically, all interested parties were entitled at that hearing to make a record upon which the Board was required to make its determination if a "question of representation exists" and, if so, to direct an election by secret ballot and certify the results thereof. Under the procedure thus provided, no merit is discernible in the suggestion that due process was not accorded. If petitioner in its attack upon the order in the unfair labor practice case is entitled to bring into the record matters which *dehors* the hearing record, which Congress has specified as the basis for the Board's order in the representation proceeding, we suppose, at any rate it appears reason-

able to think, that the Board would be entitled to include such matter in the record in support of its order. Such an attempt by the Board, however, in this or any other case would undoubtedly be met by a successful challenge that the Board had exceeded its authority and that the petitioner had been deprived of due process because the Board had taken into consideration matters developed in the preliminary investigation, to which the petitioner was not a party and in which it had no opportunity to be heard.

No good purpose could be served in setting forth the numerous provisions in the Board's published Statements of Procedure relative to an investigation under Section 9 of the Act because what we have said as to the statutory provision is in the main applicable. Moreover, we think such procedures are for the most part merely suggestive and for the guidance and benefit of the petitioning union and the Board. They are of no legal concern to others who at that stage are unknown to the proceedings. Petitioner in its brief states that of the numerous objections raised before the Board in the unfair labor practice hearing, the only ones now pertinent to this motion are:

"It was a major contention of Petitioner that the Regional Director, condoned by the Board, grossly abused its discretion by proceeding with the investigation of the petition of Local 1083, UAW–CIO for representation of the 1580 employees in the unit sought, without requiring any substantial showing of interest in Local 1083 by the employees in the unit, and the refusal of the Trial Examiner to require the production of the records, memoranda or other material bearing on the investigation of such showing of interest."

This contention is predicated upon Sec. 101.17 of the Board's published Statements of Procedure which, so far as material, provides:

"Upon receipt of the petition in the regional office, it is docketed and assigned to a member of the staff, usually a field examiner, for investigation. He conducts an investigation to ascertain * * * (4) whether, if the petitioner is a labor organization seeking recognition, there is a sufficient probability, based on the evidence of representation of the petitioner, that the employees have selected it to represent them. The evidence of representation submitted by the petitioning labor organization * * * is ordinarily checked to determine the number or proportion of employees who have designated the petitioner, it being the Board's administrative experience that in the absence of special factors the conduct of an election serves no purpose under the statute unless the petitioner has been designated by at least 30 percent of the employees."

It is apparent on the face of this statement that it was not intended to and cannot be given the effect of law. It is only a statement of policy or suggested procedure, including a statement of the Board's experience as to the circumstances when the calling of an election would serve a purpose under the Act.

In response to a similar contention, it has been held by the Ninth Circuit, in National Labor Relations Board v. J. I. Case Co., 201 F.2d 597, and by the Fifth Circuit, in National Labor Relations Board v. White Construction & Engineering Co., Inc., 204 F.2d 950, that the showing of interest by the petitioning union in a representation proceeding is not subject to review. In the former case, the court stated, 201 F.2d at page 600:

"But we agree with the Board that no statutory purpose would be served by requiring formal proof at the hearing of the substantiality of the Union's claim to representation or by permitting the contending parties to litigate such issue at the hearing. Among other undesirable consequences, a trial of that nature would bring about disclosure of the

individual employees' desires with respect to representation and would violate the long-established policy of secrecy of the employees' choice in such matters."

In the latter case, the court stated, 204 F.2d at page 953:

"But the Board's authority to conduct an investigation under section 9(c) of the Act, is not dependent upon such a showing. The preliminary investigation usually made, and the Board's requirement that a petitioning union show that it represents a substantial number of employees in the bargaining unit, are for administrative purposes, to enable the Board to screen out petitions with little or no prospect of success."

■ This reasoning as to a showing of interest by a petitioning union is likewise pertinent to the other factors which the Board is authorized to consider in determining whether it will provide for a hearing in a representation proceeding. It is only then that interested parties, including an employer and competing unions, are entitled to make a record upon a question of representation as the basis for a direction by the Board that an election be held.

We see no purpose in relating or discussing the legislative history of the Act, in which petitioner professes to find support for its contention. It is sufficient, we think, to state that we have read it and think if it has any bearing, which we doubt, it is adverse rather than favorable to petitioner. Neither do we think there is anything in the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., which is of any benefit to petitioner.

Petitioner's motion to require the Labor Board to expand the record is denied.