[Civ. No. 39253. First Dist., Div. Four. Feb. 3, 1977.]

NISHIKAWA FARMS, INC., Plaintiff and Appellant, v.
ROGER MAHONY et al., Defendants and Respondents;
UNITED FARM WORKERS OF AMERICA, AFL-CIO,
Real Party in Interest and Respondent.

**COUNSEL**

Littler, Mendelson, Fastiff & Tichy, George J. Tichy II, James J. Meyers, Jr., Purtell & Hoppin and Thomas A. Purtell for Plaintiff and Appellant.

Harry J. Delizonna and Robert Le Prohn for Defendants and Respondents.

Jerome Cohen, Sanford N. Nathan, E. Michael Heumann II, W. Daniel Boone and Glenn Rothner for Real Party in Interest and Respondent.

**OPINION**

**CHRISTIAN, J.**—Nishikawa Farms, Inc. appeals from a judgment which denied a writ of mandate to compel the Agricultural Labor

Relations Board (ALRB) to set aside a representation election. We affirm the judgment.

On September 8, 1975, the United Farm Workers of America, AFL-CIO, filed with the ALRB at its Sacramento regional office a petition for certification pursuant to section 1156.3 of the Labor Code, seeking a representation election among appellant's employees. The petition was accompanied by authorization cards signed by 104 of the persons then employed by appellant. It was alleged in the petition that appellant then had approximately 150 agricultural employees.

As required by the regulations which had been adopted by the ALRB (Cal. Admin. Code, tit. 8, § 20310), appellant delivered to the ALRB a list of employees for the payroll period immediately preceding the filing of the petition for certification. The list contained 246 names. Appellant informed the ALRB in writing that during the preceding year the highest level of employment during any single week had been approximately 200 employees.

Agents of the ALRB investigated whether there was reasonable cause to believe that a bona fide question of representation existed; on the basis of this investigation, ALRB's regional director ordered that a representation election be held among appellant's employees. The election was conducted on September 15, 1975. There were 160 votes cast: 113 were for the UFW and 47 were for no union. The results of the election were certified by the board.

Appellant contends that in the present case both the decision to hold a representation election and the certification of its results by the ALRB were improper because the board, acting through its regional director, had erred when it concluded that the UFW had made a sufficient "showing of interest" within the meaning of section 1156.3, subdivision (a), of the Agricultural Labor Relations Act (ALRA).[1] The argument is

[1]Labor Code section 1156.3 provides in part as follows:

"(a) A petition which is either signed by, or accompanied by authorization cards signed by, a majority of the currently employed employees in the bargaining unit may be filed in accordance with such rules and regulations as may be prescribed by the board, by an agricultural employee or group of agricultural employees, or any individual or labor organization acting in their behalf alleging all the following:

"(1) That the number of agricultural employees currently employed by the employer named in the petition, as determined from his payroll immediately preceding the filing of the petition, is not less than 50 percent of his peak agricultural employment for the current calendar year.

"(2) That no valid election pursuant to this section has been conducted among the

that the board acted in excess of its statutory authority because it scheduled, conducted and certified an election in the absence of a petition supported by a majority of the persons then employed in the bargaining unit.

Respondents first urge that the claim is premature; they contend that the orders directing that an election be conducted and certifying the election results are not final orders of the board subject to judicial review under Labor Code section 1160.8, and that judicial review must await an appeal from an unfair labor practice order of the board.

Secondly, respondents contend that although judicial review of some matters pertinent to certification is available incident to review of an unfair labor practice order issued by the board, the "showing-of-interest" determination is merely an administrative matter and is not reviewable at all under the ALRA.

The California statute is closely modeled on the National Labor Relations Act (hereinafter NLRA; 29 U.S.C. §§ 151-168 [1970]), with certain changes to accommodate the special problems of agriculture. Section 1160.8[2] of the Agricultural Labor Relations Act provides for

---

agricultural employees of the employer named in the petition within the 12 months immediately preceding the filing thereof.

"(3) That no labor organization is currently certified as the exclusive collective bargaining representative of the agricultural employees of the employer named in the petition.

"(4) That the petition is not barred by an existing collective-bargaining agreement.

"Upon receipt of such a signed petition, the board shall immediately investigate such petition, and, if it has reasonable cause to believe that a bona fide question of representation exists, it shall direct a representation election by secret ballot to be held, upon due notice to all interested parties and within a maximum of seven days of the filing of the petition. If at the time the election petition is filed a majority of the employees in a bargaining unit are engaged in a strike, the board shall, with all due diligence, attempt to hold a secret ballot election within 48 hours of the filing of such petition. The holding of elections under strike circumstances shall take precedence over the holding of other secret ballot elections."

[2]Labor Code section 1160.8 provides:

"Any person aggrieved by the final order of the board granting or denying in whole or in part the relief sought may obtain a review of such order in the court of appeal having jurisdiction over the county wherein the unfair labor practice in question was alleged to have been engaged in, or wherein such person resides or transacts business, by filing in such court a written petition requesting that the order of the board be modified or set aside. Such petition shall be filed with the court within 30 days from the date of the issuance of the board's order. Upon the filing of such petition, the court shall cause notice to be served upon the board and thereupon shall have jurisdiction of the proceeding. The board shall file in the court the record of the proceeding, certified by the board within 10 days after the clerk's notice unless such time is extended by the court for

judicial review of "final orders" of the ALRB. The language of that section closely follows that of section 10, subdivision (f), of the National Labor Relations Act (29 U.S.C. § 160(f)). Section 1158 of the ALRA and section 9, subdivision (d), of the NLRA (29 U.S.C. § 159(d)) are also substantially parallel provisions. It is required by section 9, subdivision (d), of the NLRA that whenever a petition is filed with a federal court of appeals for review of an NLRB order in an unfair labor practice proceeding, the record of the certification proceeding becomes part of the record for review. ■ Orders in certification proceedings are not directly reviewable in the courts but only become reviewable through section 9, subdivision (d), and section 10, subdivision (e), of the NLRA (29 U.S.C. § 159(d), § 160(e)) whereby an employer may, by resistance to an unfair labor charge, obtain review of some issues which may be involved in such certification. (See *Boire* v. *Greyhound Corp.* (1964) 376 U.S. 473, 476-477 [11 L.Ed.2d 849, 84 S.Ct. 894]; see also *Groendyke Transport, Inc.* v. *Davis* (5th Cir. 1969) 406 F.2d 1158, 1163-1164, cert. den. 394 U.S. 1012 [23 L.Ed.2d 39, 89 S.Ct. 1628]; *Boire* v. *Miami Herald Publishing Co.* (5th Cir. 1965) 343 F.2d 17, 20, cert. den. 382 U.S. 824 [15 L.Ed.2d 70, 86 S.Ct. 56]; *Eastern Greyhound Lines* v. *Fusco* (6th Cir. 1963) 323 F.2d 477, 479.)

■ When legislation has been applied in judicial decisions and then a subsequent statute on an analogous subject employs identical language, it is to be presumed that the Legislature intended that the language be given a like interpretation in applying the new enactment. "This rule is applicable to state statutes which are patterned after federal statutes." (*Los Angeles Met. Transit Authority* v. *Brotherhood of Railroad Trainmen* (1960) 54 Cal.2d 684, 688-689 [8 Cal.Rptr. 1, 355 P.2d 905]; see *Englund* v. *Chavez* (1972) 8 Cal.3d 572, 591 [105 Cal.Rptr. 521, 504 P.2d 457];

good cause shown. The court shall have jurisdiction to grant to the board such temporary relief or restraining order it deems just and proper and in like manner to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part, the order of the board. The findings of the board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive.

"An order directing an election shall not be stayed pending review, but such order may be reviewed as provided in Section 1158. If the time for review of the board order has lapsed, and the person has not voluntarily complied with the board's order, the board may apply to the superior court in any county in which the unfair labor practice occurred or wherein such person resides or transacts business for enforcement of its order. If after hearing, the court determines that the order was issued pursuant to procedures established by the board and that the person refuses to comply with the order, the court shall enforce such order by writ of injunction or other proper process. The court shall not review the merits of the order." .

*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 852-853 [94 Cal.Rptr. 785, 484 P.2d 953].) ■ In light of the foregoing principle, we conclude that a certification order under section 1156.3 of the ALRA is not a "final order" of the board; therefore, it is not normally subject to judicial review except as it may be drawn in question by a petition for review of an order made under section 1160.3 of the act restraining an unfair labor practice. (See also Lab. Code, § 1158.)

■ Appellant points out, however, that under the federal cases the proscription on direct judicial review of certification orders issued by the NRLB is not absolute. In two cases the Supreme Court has permitted a federal district court to entertain a suit for an injunction where questions of representation were involved. But these cases involved "exceptional factual situations of such urgency as to warrant the overriding of the congressional policy against such immediate review." (*Greensboro Hosiery Mills, Inc.* v. *Johnston* (4th Cir. 1967) 377 F.2d 28, 31.) A third exception has been carved out by the Second Circuit. These three limited exceptions to the proscription are summarized in *Boire* v. *Miami Herald Publishing Co., supra,* 343 F.2d 17, 21:

"One exceptional set of circumstances is presented where the suit tenders·'public questions particularly high in the scale of our national interest because of their international complexion.' McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 17, 83 S.Ct. 671, 675, 9 L.Ed.2d 547, 552 (1963). Another exception, which has been fashioned primarily by the Second Circuit, comes into play where there is a substantial showing that Board action has violated the constitutional rights of the complaining party. See Fay v. Douds (2 Cir. 1949) 172 F.2d 720. The third exception, on which the appellee relies strongly, is predicated on the Supreme Court's decision in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). There the court upheld a district court injunction setting aside a Board election and certification where the Board had clearly acted 'in excess of its delegated powers and contrary to a specific prohibition in the Act.' 79 S.Ct. at 184, 3 L.Ed.2d at 214. The courts have generally interpreted Kyne as sanctioning the use of injunctive powers only in a very narrow situation in which there is a 'plain' violation of an unambiguous and mandatory provision of the statute. See Eastern Greyhound Lines v. Fusco (6 Cir. 1963) 323 F.2d 477; Consolidated Edison Co. v. McLeod (S.D.N.Y.) 202 F.Supp. 351, aff'd. 302 F.2d 354 (2 Cir. 1962); Local 1545, United Bhd. of Carpenters v. Vincent (2 Cir. 1960) 286 F.2d 127; International Ass'n of Tool

Craftsmen v. Leedom (1960) 107 U.S.App.D.C. 268, 276 F.2d 514. This exception has been applied to an affirmative requirement of the Act as well as a statutory prohibition See Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch (1963) 116 U.S.App.D.C. 243, 322 F.2d 993. Nevertheless, it seems clear that, in light of the congressional purpose behind limited review of certification proceedings, representation matters are enjoinable only where the fact of a statutory violation cannot seriously be argued and where the deviation resulted in a deprivation of a 'right' guaranteed by the Act." (See *Teamsters, Chauffeurs, Help. & Del. Dr., Local 690* v. *N. L. R. B.* (9th Cir. 1967) 375 F.2d 966, 968.) Here, appellant relies heavily upon the *Leedom* v. *Kyne* exception, *supra,* 358 U.S. 184, to support its argument that direct judicial review of the certification order should be available in this case. In *Kyne,* the Supreme Court upheld direct intervention by a federal district court to strike down an order of the NLRB "made in excess of its delegated powers and contrary to a specific prohibition in the Act." (*Leedom* v. *Kyne, supra,* 358 U.S. at p. 188 [3 L.Ed.2d at p. 214].) In that case, the NLRB had included both professional and nonprofessional employees in the bargaining unit without granting professional employees the opportunity to vote on the question of inclusion in such a unit. This action of the board was contrary to the specific statutory language of section 9, subdivision (b)(1), of the NLRA, which provides: "That the Board shall not (1) decide that any unit is appropriate . . . if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit; . . ." (29 U.S.C. § 159(b)(1).) With regard to the NLRB's action, the *Kyne* court upheld the exercise of jurisdiction by the district court, stating: "Plainly, this was an attempted exercise of power that had been specifically withheld. It deprived the professional employees of a 'right' assured them by Congress. Surely, in these circumstances, a Federal District Court has jurisdiction of an original suit to prevent deprivation of a right so given." (358 U.S. at p. 189 [3 L.Ed.2d at p. 214].)

However, the *Leedom* v. *Kyne* exception is a very limited one. As the Supreme Court emphasized in *Boire* v. *Greyhound Corp., supra*: "The *Kyne* exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law. Judicial review in such a situation has been limited by Congress to the courts of appeals, and then only under the conditions explicitly

laid down in § 9(d) of the Act." (376 U.S. at pp. 481-482 [11 L.Ed.2d at p. 855].)

" . . . Both the House and the Senate Reports spelled out the thesis, repeated on the floor, that the purpose of § 9(d) was to provide 'for review in the courts only after the election has been held and the Board has ordered the employer to do something predicated upon the results of the election.' Congressional determination to restrict judicial review in such situations was reaffirmed in 1947, at the time that the Taft-Hartley amendments were under consideration, when a conference committee rejected a House amendment which would have permitted any interested person to obtain review immediately after a certification because, as Senator Taft noted, 'such provision would permit dilatory tactics in representation proceedings.' " (376 U.S. at pp. 478-479 [11 L.Ed.2d at pp. 853-854].)

After an investigation, the ALRB made a factual determination that there was a sufficient showing of interest under section 1156.3 to conduct an election in this case. Even if it were shown that the determination of the ALRB was erroneous, such would not be sufficient to warrant direct review of an election under the *Kyne* exception. In *McCulloch* v. *Libbey-Owens-Ford Glass Co.* (D.C.Cir. 1968) 403 F.2d 916, 917 [131 App.D.C. 190], cert. den. 393 U.S. 1016 [21 L.Ed.2d 560, 89 S.Ct. 618], the court stated:

"As we said in Local 130, Internat'l Union of Elec., Radio & Machine Workers v. McCulloch, 120 U.S.App.D.C. 196, 201, 345 F.2d 90, 95 (1965): . . . to say that there are possible infirmities in an action taken by the Board by reason of an erroneous or arbitrary exertion of its authority in respect of the facts before it is not to conclude that there is jurisdiction in the District Court to intervene by injunction. For such jurisdiction to exist, the Board must have stepped so plainly beyond the bounds of the Act, or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court . . . . [¶] The Board's action in this case, if at all inconsistent with the Act, was certainly not so 'plainly beyond' its bounds or so 'clearly in defiance' of it." (See also *Local 1545, United Bro. of Carpenters, etc.* v. *Vincent* (2d Cir. 1960) 286 F.2d 127; *Local 130, Internat. U. of Elec. R. & M. Wkrs.* v. *McCulloch* (D.C.Cir. 1965) 345 F.2d 90, 95 [120 App.D.C. 196].)

Respondents offer an additional ground on which to uphold the trial court's decision: they argue that the "showing-of-interest" determination

(see § 1156.3) is merely an administrative matter and is not one of the issues involved in a certification election which is reviewable at all under the ALRA. Appellant contends that a majority showing of interest is a jurisdictional requirement that must be met before the board may direct that a representational election be conducted.

 It is clear that a "showing-of-interest" determination is not reviewable under the NLRA. Section 9, subdivision (c)(1), of the National Labor Relations Act (29 U.S.C. § 159(c)(1)) permits the NLRB to order a representation election upon a petition "alleging that a *substantial* number of employees (i) wish to be represented for collective bargaining . . ." (Italics added.) By regulation, the NLRB has defined "substantial number of employees" to require authorization cards from 30 percent of the employees in the bargaining unit. (See NLRB, Rules & Regs., Series 8, as amended §§ 101.17 and 101.18 [C.F.R., pp. 695-696].) Both the NLRB and the federal courts have held that showing-of-interest determinations are not reviewable under the NLRA. (See *Intertype Company* v. *N. L. R. B.* (4th Cir. 1968) 401 F.2d 41, cert. den. 393 U.S. 1049 [21 L.Ed.2d 691, 89 S.Ct. 686]; *N. L. R. B.* v. *Air Control Products of St. Petersburg, Inc.* (5th Cir. 1964) 335 F.2d 245; *N. L. R. B.* v. *Swift and Co.* (3d Cir. 1961) 294 F.2d 285; *Kearney & Trecker Corp.* v. *National Labor Rel. Bd.* (7th Cir. 1953) 209 F.2d 782; *National Labor Relations Bd.* v. *White Const. & Eng. Co.* (5th Cir. 1953) 204 F.2d 950; *National Labor Relations Bd.* v. *J. I. Case Co.* (9th Cir. 1953) 201 F.2d 597; *Matter of O. D. Jennings & Co.* (1946) 68 NLRB 516, 517-518.) In *National Labor Relations Bd.* v. *J. I. Case Co., supra,* 201 F.2d 597, 600, the court stated: "we agree with the Board that no statutory purpose would be served by requiring formal proof at the hearing of the substantiality of the Union's claim to representation or by permitting the contending parties to litigate such issue at the hearing. Among other undesirable consequences, a trial of that nature would bring about disclosure of the individual employees' desires with respect to representation and would violate the long-established policy of secrecy of the employees' choice in such matters. As said by the Board in the case quoted from in footnote 3, supra, 'it is the election . . . which decides the substantive issue whether or not the [union] or another labor organization, if any, actually represents a majority of the employees involved in a representation case.' "

Respondents contend that the showing-of-interest provisions of the ALRA are essentially a combination of NLRA section 9, subdivision (c)(1)(A), and the NLRB regulations concerning showing of interest, and

that showing of interest under the ALRA, as under the NLRA, is an administrative matter not subject to judicial review. The ALRA specifically provides that "The board shall follow applicable precedents of the National Labor Relations Act, as amended."[3] Among the emergency regulations adopted by the ALRB for the operation of the act was the following: "The Board or the regional director shall determine *administratively* whether there exists an adequate showing of employee support as required by Sec. 1156.3 of the Labor Code to warrant the conduct of an election." (Cal. Admin. Code, tit. 8, § 20315[4]; italics added.)

Section 1156.3, subdivision (a), of the ALRA reads in part: "A petition which is either signed by, or accompanied by authorization cards signed by, a majority of the currently employed employees in the bargaining unit may be filed in accordance with such rules and regulations as may be prescribed by the board, by an agricultural employee or group of agricultural employees, or any individual or labor organization acting in their behalf alleging all the following: . . . ." Four allegations are then required: (1) that the number of currently employed employees is not less than 50 percent of peak employment during the current calendar year; (2) that no election has been held for 12 months; (3) that no other labor organization is currently certified; and (4) that there is no existing collective bargaining agreement which would bar the petition. Section 1156.3, subdivision (a)(4), continues: "Upon receipt of such a signed petition, the board shall immediately investigate such petition, and, if it has reasonable cause to believe that a bona fide question of representation exists, it shall direct a representation election . . . ." Thus, there is a change in language from the NLRA's "a petition . . . *alleging* that *a substantial number* of employees wish to be represented" to the ALRA's "a petition . . . *signed by* . . . *a majority* of currently employed employees." (Italics added.) Appellant contends that the Legislature, by requiring evidence of a certain percentage of employee support, intended to make showing of interest a jurisdictional prerequisite to the conduct of an election and an issue that could be litigated.

However, as respondents point out, the ALRA specifically precludes the ALRB from directing an election if the allegations required by section 1156.3, subdivision (a)(1)-(4), are incorrect. Section 1156.4 prohibits the board from considering a representation petition unless the employer's payroll reflects 50 percent of peak agricultural employment.

[3]Labor Code section 1148.

[1]Repealed Register 76, No. 45a, December 4, 1976. See California Administrative Code, title 8, section 20300 (j)(2).

Section 1156.5 prohibits the directing of an election in a unit in which a valid election has been held within the previous 12 months. Section 1156.6 prohibits the directing of an election in a unit represented by a labor organization certified within the preceding 12-month period, and section 1156.7, subdivision (b), sets out a 3-year contract bar rule. But there is no statutory bar against directing an election in the absence of a majority showing of interest.

■ Showing of interest serves the same purposes under the ALRA as it does under the NLRA; it permits the agency to devote its time and resources to those cases where there is some reasonable expectation that a bargaining agent will be selected. As respondents correctly contend, the "showing-of-interest" requirements of section 1156.3, subdivision (a), do not create an employer right not to have an election, any more than section 9, subdivision (c)(1)(A), of the National Labor Relations Act establishes such a right; rather, the "majority" and "substantial number" (i.e., 30 percent) requirements each provide the agency with a statutory basis for declining to investigate petitions where the absence of employee interests makes it unlikely that the union-petitioner could prevail. As stated in *National Labor Rel. Bd.* v. *National Truck Rental Co.* (D.C.Cir. 1956) 239 F.2d 422, 424-425, cert. den. 352 U.S. 1016 [1 L.Ed.2d 547, 77 S.Ct. 561], (7) "It is not essential to the Board's jurisdiction to order an election . . . that a formal showing be made that the unions have been designated by a substantial number of employees. Rather than being jurisdictional these requirements are merely steps in the screening process by which the Board determines whether the claims of representation, prima facie, warrant the expense and effort of an election. . . . As to the showing of substantial employee interest by the petitioning unions prior to the election, there is no reason for permitting litigation of the issue by the parties; the purpose of the requirement is to make Board operations more efficient and compliance with the requirement is a matter solely for administrative determination." (See *N. L. R. B.* v. *Air Control Products of St. Petersburg, Inc., supra,* 335 F.2d 245; *Kearney & Trecker Corp.* v. *National Labor Rel. Bd., supra,* 209 F.2d 782, 787-788; *National Labor Relations Bd.* v. *White Const. & Eng. Co., supra,* 204 F.2d 950, 953.)

The judgment and the order dissolving the temporary restraining order are affirmed.

Caldecott, P. J., and Rattigan, J., concurred.