[Civ. No. 3073. Fifth Dist. July 27, 1977.]

JACK RADOVICH, Plaintiff and Appellant, v.
AGRICULTURAL LABOR RELATIONS BOARD,
Defendant and Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO et al.,
Real Parties in Interest and Respondents.

[Civ. No. 3087. Fifth Dist. July 27, 1977.]

JAKE J. CESARE AND SONS, Plaintiff and Appellant, v.
AGRICULTURAL LABOR RELATIONS BOARD,
Defendant and Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO,
Real Party in Interest and Respondent.

**38**

---

**COUNSEL**

Seyfarth, Shaw, Fairweather & Geraldson, Joseph Herman and Bette Bardeen for Plaintiffs and Appellants.

Harry J. Delizonna, Dennis M. Sullivan, Ellen Lake and Edwin F. Lowry for Defendant and Respondent.

Jerome Cohen, Sanford N. Nathan, W. Daniel Boone, Glenn Rothner, E. Michael Heumann II, Tom Dalzell, Linton Joaquin and Deborah Peyton for Real Parties in Interest and Respondents.

## OPINION

**HOPPER, J.**—These matters are consolidated appeals from judgments of the Superior Court of Tulare County. In each case after a hearing on a petition for administrative mandamus, the court found that the Agricultural Labor Relations Board did not act in excess of its jurisdiction; the jurisdiction of the regularity of elections was part of the function and jurisdiction reserved to the Agricultural Labor Relations Board and the superior court was without jurisdiction.[1]

Appellants contend: (1) That the superior court has jurisdiction under Code of Civil Procedure section 1094.5 to review the Board's certification orders. (2) That although the court may not have jurisdiction in all cases to review certification orders, such jurisdiction exists in the present cases due to the exception set forth in *Leedom* v. *Kyne* (1958) 358 U.S. 184 [3 L.Ed.2d 210, 79 S.Ct. 180].

For the same reasons set out in *Nishikawa Farms, Inc.* v. *Mahony* (1977) 66 Cal.App.3d 781 [136 Cal.Rptr. 233], we hold the first contention to be without merit. We therefore proceed to discuss the second contention.

In 5 Civil 3073 the petition alleged that on September 8, 1975, real party in interest United Farm Workers of America, AFL-CIO (hereinafter UFW or real party) filed with respondent Board a petition to be certified as the collective bargaining agent of appellant Radovich's agricultural employees. Subsequently the Western Conference of Teamsters, Agricultural Division, filed a petition to intervene in the election. An election was held, resulting in 83 votes for real party, 46 votes for no union, 17 votes for the Teamsters, 2 unresolved challenges, and 1 void

---

[1]For the purposes of this opinion, Board refers to the Agricultural Labor Relations Board, and Act refers to the Agricultural Labor Relations Act. (Lab. Code, § 1140 et seq.)

ballot. Appellant thereupon filed objections to conduct which it alleged affected the election. On October 21, 1975, the Board notified appellant that certain of its objections were being dismissed without hearing. These objections related to the following issues:

"(i)    whether the UFW made a proper showing of interest in support of its Petition, as required by Section 1156.3(a) of the Act;

"(ii)   whether the ALRB properly utilized symbols on the election ballot and whether the use of symbols on the ballot confused or otherwise misled voters;

"(iii)  whether the failure of the ALRB to provide 'Notices of Election' until approximately 1:00 p.m. the day before the election resulted in inadequate notice to eligible voters and, consequently, disenfranchised many eligible voters;

"(iv)   whether the failure of the ALRB to provide a Sample Ballot with the Notice of Election resulted in the voters being unnecessarily confused at the time of the election by the choices on the ballot;

"(v)    whether the UFW's failure to provide a list of election observers at the pre-election conference prejudiced Petitioner and improperly affected the results of the election."

Respondent directed that a hearing be held on appellant's other objections. By a decision issued January 20, 1976, respondent rejected appellant's contentions and ordered real party certified as bargaining agent for appellant's employees. The Board found:

"(i) that statements prior to the election by UFW agents to various of Petitioner's employees, to the effect that there would be no hiring hall if the UFW won the election, did not warrant setting aside the election;

"(ii) that statements prior to the election by UFW agents to various of Petitioner's employees, to the effect that there would be no dues charged for one year if the UFW won the election, did not warrant setting aside the election;

"(iii) that the offer of free medical care to one of Petitioner's employees by UFW agents prior to the election did not warrant setting aside the election;

"(iv) that the promise by UFW agents of a party for Petitioner's employees if the UFW won the election did not warrant setting aside the election;

"(v) that threatening statements made prior to the election by UFW agents to certain of Petitioner's employees in order to coerce support for the UFW did not warrant setting aside the election."

Appellant's petition alleged that respondent abused its discretion in making these findings, and that it also denied appellant the right to a fair trial in failing to hold a hearing on appellant's other objections listed above.

In 5 Civil 3087 the petition alleged that on September 8, 1975, the UFW filed with respondent a petition to be certified as the collective bargaining agent of appellant Cesare and Sons' agricultural employees. An election was held, resulting in 13 votes for the UFW and 10 votes for no union. Appellant thereupon filed objections to conduct which it alleged affected the election. On October 3, 1975, the Board notified appellant that certain of its objections were being dismissed without hearing. These objections related to the following issues:

"(i) whether the UFW made a proper showing of interest in support of its Petition, as required by Section 1156.3(a) of the Act;

"(ii) whether the ALRB properly utilized symbols on the election ballot and whether the use of symbols on the ballot confused or otherwise misled voters;

"(iii) whether the failure of the ALRB to provide a Sample Ballot with the Notice of Election resulted in the voters being unnecessarily confused at the time of the election by the choices on the ballot."

Respondent directed that a hearing be held on appellant's other objections. By a decision issued January 8, 1976, respondent rejected appellant's contentions and ordered real party certified as bargaining agent for appellant's employees. The Board found:

"(i) that the failure of the ALRB to conduct the election within seven days of the filing of the Petition, as expressly mandated by Section 1156.3(a) of the Act, did not warrant setting aside the election;

"(ii) that the closing of the polls 15 to 30 minutes earlier than scheduled did not warrant setting aside the election;

"(iii) that a statement by UFW agents to several of Petitioner's employees on the day before the election, to the effect that if the UFW won the election, the employees could get a reelection within 60 days if they were unhappy with the UFW or any contract it negotiated, did not warrant setting aside the election."

Appellant's petition alleged that respondent abused its discretion in making these findings, and that it also denied appellant the right to a fair trial in failing to hold a hearing on appellant's other objections listed above.

Appellants argue that portions of their petitions fall within the exception to the rule that a certification order may not be directly challenged, carved out by *Leedom* v. *Kyne, supra,* 358 U.S. 184. In *Kyne,* the NLRB conducted an election in a unit containing professional and nonprofessional employees without giving the professionals an opportunity to vote on whether they wished to be included with the nonprofessionals in one unit. This was in direct violation of 29 U.S.C. 159(b)(1). The Board did not contest the fact that it had acted in excess of its powers, but merely challenged the jurisdiction of the federal district court to entertain the suit. The Supreme Court held that in such extraordinary circumstances a petition for direct review was permissible.

The exception of *Kyne* has been narrowly construed. *Boire* v. *Greyhound Corp.* (1964) 376 U.S. 473, 481 [11 L.Ed.2d 849, 855, 84 S.Ct. 894], stated: "The *Kyne* exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law."

Nor does the fact that the issue is a legal rather than a factual one invoke the exception. An erroneous assertion of the Board's authority is insufficient: " . . . it seems clear that, in light of the congressional purpose behind limited review of certification proceedings, representation matters are enjoinable only where the fact of a statutory violation cannot seriously be argued and where the deviation resulted in a deprivation of a 'right' guaranteed by the Act." (*Boire* v. *Miami Herald Publishing Co.*

(5th Cir. 1965) 343 F.2d 17, 21; see also *McCulloch* v. *Libbey-Owens-Ford Glass Co.* (D.C. Cir. 1968) 403 F.2d 916, 917 [131 App.D.C. 190].)

The *Kyne* exception provides for an action under the National Labor Relations Act itself. The petitions here attempt to invoke the court's jurisdiction under Code of Civil Procedure section 1094.5. We treat the petitions as being brought under the Act itself.

■ The vast majority of the allegations of the two petitions are complaints that there was no evidence to support the Board's conclusions. These clearly are factual questions not within the purview of the *Kyne* exception. Appellants do assert two specific situations falling, they say, within the *Kyne* exception.

First, appellants argue that the Board acted improperly in dismissing some of their objections without a hearing. This, they claim, is in direct violation of Labor Code section 1156.3, subdivision (c), which states in relevant part:

"(c) Within five days after an election, any person may file with the board a signed petition asserting that allegations made in the petition filed pursuant to subdivision (a) were incorrect, that the board improperly determined the geographical scope of the bargaining unit, or objecting to the conduct of the election or conduct affecting the results of the election.

"Upon receipt of a petition under this subdivision, the board, upon due notice, *shall conduct a hearing* to determine whether the election shall be certified." (Italics added.)

Both respondent and real party rely on *Dyestuffs and Chemicals, Inc.* v. *Flemming* (8th Cir. 1959) 271 F.2d 281, certiorari denied, 362 U.S. 911 [4 L.Ed.2d 619, 80 S.Ct. 681]. In that case the court, faced with a provision in the Food and Drug Act similar to the one in the Act, stated: "The hearing is solely for the purpose of receiving evidence 'relevant and material to the issues raised by such objections.' Certainly, then, the objections, in order to be effective and necessitate the hearing requested, must be legally adequate so that, if true, the order complained of could not prevail. The objections must raise 'issues.' The issues must be material to the question involved; that is, the legality of the order attacked. They may not be frivolous or inconsequential. Where the objections stated and the issues raised thereby are, even if true, legally

insufficient, their effect is a nullity and no objections have been stated. Congress did not intend the governmental agencies created by it to perform useless or unfruitful tasks. If it is perfectly clear that petitioner's appeal for a hearing contains nothing material and the objections stated do not abrogate the legality of the order attacked, no hearing is required by law." (*Id.* at p. 286.) (See also *Pharmaceutical Manufacturers Ass'n.* v. *Richardson* (D.Del. 1970) 318 F.Supp. 301.) While *Dyestuffs* is factually distinguishable from the present case, the quotation therefrom is pertinent since the court points out that apparently absolute language requiring an administrative board to hold a hearing does not in fact compel a hearing in each and every case.

As stated above, the five objections raised by appellant Radovich which respondent dismissed without a hearing were (1) whether the UFW made a proper showing of interest in support of its petition; (2) the effect of respondent's failure to provide "Notices of Election" until 1 p.m. on the day before the election; (3) the propriety of respondent's use of symbols on the ballot; (4) the effect of respondent's failure to provide a sample ballot with the notice of election; and (5) the effect of the UFW's failure to provide a list of election observers at the pre-election conference. The dismissed objections raised by appellant Cesare and Sons are identical to issues (1), (3), and (4) above.

The showing of interest objection was dismissed under the Board regulation (Cal. Admin. Code, tit. 8, § 20315, subd. (c))[2] which provides that "[m]atters relating to the sufficiency of employee support shall not be reviewable by the Board in any proceeding under Chapter 5 of the Act." A similar showing of interest objection was before the court in *Nishikawa* and found not to be within the *Kyne* exception. We agree for the reasons expressed therein.

The objection that the Board failed to provide written notice of election until approximately 1 p.m. on the day prior to the election was dismissed because the employer failed to provide supporting

[2]All regulations referred to in this opinion were adopted under the authority of Labor Code section 1144, which provides: "The board may from time to time make, amend, and rescind, in the manner prescribed in Chapter 4.5 (commencing with Section 11371) of Part 1 of Division 3 of Title 2 of the Government Code, such rules and regulations as may be necessary to carry out the provisions of this part."

Regulation 20315, subdivision (a) provides: "(a) The Board or the regional director shall determine administratively whether there exists an adequate showing of employee support as required by Sec. 1156.3 of the Labor Code to warrant the conduct of an election."

declarations as required by the Board regulation (Cal. Admin. Code, tit. 8, § 20365).[3] The Board contended that in order to prove its claim, the employer would have to produce evidence that some employees, who otherwise might have voted, did not do so because they did not receive notice. Such evidence was not set forth in an accompanying declaration.

The record is not clear as to the objection regarding symbols. However, regulations cover this subject (Cal. Admin. Code, tit. 8, § 21000). That appears to be a matter properly handled by administrative regulations. Administrative procedures short of a hearing also appear to be proper on the subject of sample ballots as well as to the list of observers. (See Cal. Admin. Code, tit. 8, § 20350.) Furthermore, we have not been shown that proper declarations were filed or that a prima facie case was presented warranting a hearing on any of those objections.

Our law favors the holding of hearings by administrative bodies. However, Labor Code section 1156.3 is not absolute.[4] Certainly, reasonable rules and regulations (and we find the rules and regulations discussed in the opinion to be reasonable) are necessary to carry out the purposes of the Act. Otherwise, naked assertions of illegality unclothed with the · raiments and accouterments designed to protect against an onslaught of inconsequential or frivolous or dilatory acts unsupported by even the undergarments of a prima facie case would frustrate the state policy as set forth in Labor Code section 1140.2.[5] The exercise of administrative power to dismiss was not so abusive here that it constituted arbitrary or

[3]Regulation 20365 provides in part: "A party filing a petition under section 1156.3(c) of the Labor Code objecting to the conduct of the election or conduct affecting the results of the election shall file with the petition declarations or other evidence establishing a prima facie case in support of the allegations of said petition. The failure to supply such evidence in support of the petition at the time of the filing of the petition shall result in the immediate dismissal of the petition or any part thereof which is not supported by such evidence."

[4]Appellants' reliance on *English* v. *City of Long Beach* (1950) 35 Cal.2d 155 [217 P.2d, 22, 18 A.L.R.2d 547] is misplaced. We do not interpret that case to require a hearing of all possible matters but merely to prohibit consideration of information received without the knowledge of the parties. This does not preclude dismissal of objections unsupported by a prima facie showing, i.e., legally insufficient objections.

[5]Labor Code section 1140.2 states: "It is hereby stated to be the policy of the State of California to encourage and protect the right of agricultural employees to full freedom of association, self-organization, and designation of representatives of their own choosing, to negotiate the terms and conditions of their employment, and to be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. For this purpose this part is adopted to provide for collective-bargaining rights for agricultural employees."

capricious action subject to judicial review. The administrative action was in full harmony with the powers and provisions of the Act.

■ None of the dismissed objections required a hearing under the totality of the circumstances presented in these consolidated cases.[6] There· was no flagrant violation warranting review under *Kyne*. We conclude that the situation in these cases does not fall within the narrow confines of the *Kyne* exception. Of course, this holding does not prevent a possible later hearing and review under chapter 4 of the Act in an unfair labor practice proceeding. Our interference at this time would prevent achievement of the legislative goals of the Act. Under the statutory scheme, review is postponed until there is a finding as to an unfair labor practice.

In 5 Civil 3087 the appellant argues that the Board did not hold the election until *nine* days after the election petition was filed and therefore Labor Code section 1156.3, subdivision (a), was violated.[7]

The Board conducted a hearing on this issue; it concluded that the statute had been violated but that no prejudice had resulted from the error. The Board in examining the possible prejudice to the parties and interested persons pointed out in its opinion at 2 ALRB No. 6: "The list of employees submitted by the employer pursuant to section 20310(d)(2) of our regulations indicates that 25 employees were on the payroll during the period immediately preceding the filing of the petition. Of this total number of eligible voters, 23 cast valid ballots. No new employees were hired during that period, and only two employees were absent from work on election day. No ballots were challenged on the ground that the voter's name did not appear on the eligibility list. It is clear, therefore, that employee turnover between the date of the employer's list and the date of the election was negligible. The voter participation in this election was an uncommonly high 92.7 percent, and the number of employees absent from work on election day was less than the margin of the UFW's victory on the tally. Furthermore, we find no evidence suggesting that any party was prejudiced in any way by the delay in holding the election. Accordingly, we conclude that the delay in holding the election does not warrant setting aside the election in this case."

[6]We need not consider the power, if any, of the Board to summarily dismiss objections where appropriate declarations in support of a petition have been filed. Such a factual situation is not before us. We refrain from unnecessary discourse on a subject which has not as yet been presented.

[7]Labor Code section 1156.3, subdivision (a), states that the Board "shall direct a representation election . . . within a maximum of seven days of the filing of the petition."

What the court said in *Liberty Mut. Ins. Co.* v. *Ind. Acc. Com.* (1964) 231 Cal.App.2d 501, 510 [42 Cal.Rptr. 58], regarding the IAC would seem to apply to the Board: "We hold that the commission did not lose jurisdiction and that the award it made was valid notwithstanding the failure to obey the statutory mandate respecting the time within which it ruled after submission. We think the Legislature . . . intended only to place the commission in such a position that it could be mandated to act if it took more time than the short period alloted." (See also *Peak* v. *IAC* (1947) 82 Cal.App.2d 926, 932 [187 P.2d 905].)

■ We hold that the narrow exception of *Kyne* is inapplicable. We do not believe that the time limit in Labor Code section 1156.3, subdivision (a), is jurisdictional. It is directory only. This is in accord with the law of this state applied to other boards, commissions, and bodies. (See *McDonald's Systems of California, Inc.* v. *Board of Permit Appeals* (1975) 44 Cal.App.3d 525, 544, fn. 15 [119 Cal.Rptr. 26] where the authorities are collected.) If appellant feels that the Board abused its discretion in concluding that the violation was harmless, its remedy is to refuse to bargain with real party and contest the issue in the subsequent unfair labor practice proceeding.

The judgments are affirmed.

Gargano, J., concurred.

**BROWN (G. A.), P. J.**—I concur in the judgment.

In doing so I wish to make my position clear with regard to those objections filed by the appellants which were dismissed without a hearing.

The objection that the respondent did not make a proper showing of interest was properly dismissed under *Nishikawa Farms, Inc.* v. *Mahony* (1977) 66 Cal.App.3d 781 [136 Cal.Rptr. 233] (see Cal. Admin. Code, tit. 8, § 20315).

As to the balance of the objections which were dismissed without a hearing, the record before us contains no showing that the appellants complied with the legally adopted Board regulation requiring the objector to "file with the petition declarations or other evidence establishing a prima facie case in support of the allegations of said

petition." (See Lab. Code, § 1144; Cal. Admin. Code, tit. 8, § 20365.)[1] Because the appellants failed to comply with this regulation, the Board was acting within its power when it dismissed these objections without a hearing. This authority was properly exercised notwithstanding the provisions of Labor Code section 1156.3, subdivision (c),[2] the regulation being reasonably directed toward preventing the filing of frivolous and nonmeritorious objections.

However, had appellants filed the appropriate declarations in support of the objections contained in their petition before the Board, I am not prepared to say that the Board could not have been compelled by court action to hold a hearing on those objections instead of summarily dismissing them. (*Leedom* v. *Kyne* (1958) 358 U.S. 184 [3 L.Ed.2d 210, 79 S.Ct. 180].)

The failure to accord a party a fair hearing not only has due-process/fair-trial overtones (see *English* v. *City of Long Beach* (1950) 35 Cal.2d 155 [217 P.2d 22, 18 A.L.R.2d 547]), but the statute expressly mandates that "[u]pon receipt of a petition under this subdivision, the board, upon due notice, *shall conduct a hearing* to determine whether the election shall be certified." (Italics added.) No equivalent provision is found in the National Labor Relations Act; consequently, federal precedents under that act are of little value. Lacking such cases, the principal opinion has gone far afield in search of authority. Some precedent has been found in a less authoritative lower federal court case

---

[1]As to the objections relating to utilization of allegedly confusing symbols on the ballot, the record is murky. The Board did not dismiss this objection on the specific ground of a lack of a declaration although there does not appear to be such a declaration in the record. The Board did dismiss on the ground that the subject matter was fully covered by a duly adopted administrative regulation. (See Cal. Admin. Code, tit. 8, § 21000.) It does not appear that the appellants are attacking the validity of that regulation.

[2]Labor Code section 1156.3 provides in part:

"(c) Within five days after an election, any person may file with the board a signed petition asserting that allegations made in the petition filed pursuant to subdivision (a) were incorrect, that the board improperly determined the geographical scope of the bargaining unit, or objecting to the conduct of the election or conduct affecting the results of the election.

"Upon receipt of a petition under this subdivision, the board, upon due notice, shall conduct a hearing to determine whether the election shall be certified. Such hearing may be conducted by an officer or employee of a regional office of the board. He shall make no recommendations with respect thereto. If the board finds, on the record of such hearing, that any of the assertions made in the petition filed pursuant to this subdivision are correct, or that the election was not conducted properly, or misconduct affecting the results of the election occurred, the board may refuse to certify the election. Unless the board determines that there are sufficient grounds to refuse to do so, it shall certify the election."

)

in another area of administrative law dealing with food and drug laws. (See *Dyestuffs and Chemicals, Inc.* v. *Flemming* (8th Cir. 1959) 271 F.2d 281, a case which I shall discuss in more detail later.)

Keeping in mind that the ALRA makes a hearing mandatory, the language of *Leedom* v. *Kyne, supra,* would permit judicial review of the ALRB's intermediate action dismissing charges without a hearing. Among other teachings, that case permits judicial review of intermediate acts of the Board when the actions are "contrary to a specific prohibition in the Act" (358 U.S. at p. 188 [3 L.Ed.2d at p. 214, 79 S.Ct. at p. 184]) and the Board action deprives a party of a right which has been assured by the legislative body. (See *Boire* v. *Miami Herald Publishing Co.* (5th Cir. 1965) 343 F.2d 17, 21.) There is nothing in *Boire* v. *Greyhound Corp.* (1964) 376 U.S. 473 [11 L.Ed.2d 849, 845 S.Ct. 894] or *Boire* v. *Miami Herald Publishing Co., supra,* 343 F.2d 17, contrary to this position. In both of those cases a hearing in fact was held by the National Labor Relations Board.

The case primarily relied upon by the principal opinion is *Dyestuffs and Chemicals, Inc.* v. *Flemming, supra,* 271 F.2d 281, which is clearly distinguishable. In that case Dyestuffs, a manufacturer of food dye, sought judicial review of an order promulgated by the Secretary of Health, Education and Welfare. The order decertified and prohibited certain dyes from use in foodstuffs. Prior to the issuance of the order no hearing was held, though a provision of the Federal Food, Drug and Cosmetic Act provides that before an order is issued "the Secretary [of Health, Education and Welfare], after due notice, shall hold such a public hearing . . . ." (21 U.S.C.A. § 371 (e)(3).)

The Supreme Court held in an analogous case (*Flemming* v. *Florida Citrus Exch.* (1958) 358 U.S. 153, 167 [3 L.Ed.2d 188, 197, 79 S.Ct. 160, 168]) that under the statute "where a coal-tar color is not harmless, it is not to be certified" and agreed with the Secretary's contention that he "is without power to permit the use of harmful coal-tar colors in specific foods through a system of tolerances." (358 U.S. at p. 166 [3 L.Ed.2d at p. 196, 79 S.Ct. at p. 168].) The dye involved in the *Dyestuffs* case was a coal-tar dye.

*Dyestuffs* sought to have the Secretary authorize the use of the prohibited dye by establishing tolerances in violation of the specific holding in the Supreme Court case.

Under these circumstances the court agreed with the Secretary's position that he had the authority to prohibit the use of the dye without a hearing because "the grounds set forth in petitioner's objections were wholly insufficient to warrant a hearing in that they sought the promulgation of regulations that were beyond the Department's authority." (*Dyestuffs and Chemicals, Inc. v. Flemming, supra,* 271 F.2d 281, 284.) The court stated that "[w]here the objections stated and the issues raised thereby are, even if true, legally insufficient, their effect is a nullity and no objections have been stated. Congress did not intend the governmental agencies created by it to perform useless or unfruitful tasks. If it is perfectly clear that petitioner's appeal for a hearing contains nothing material and the objections stated do not abrogate the legality of the order attacked, no hearing is required by law." (At p. 286.) And further, "that no hearing need be held when the prerequisite objections are not supported by grounds legally sufficient to justify the relief sought." (At p. 287.) "[N]o 'objections' can be deemed to have been filed when the grounds therefor raise no issues material to the legality of the disputed order." (At p. 287.)

This is not the situation in the case at bench. No decision or statute prohibits the ALRB from making an order that the election would not be certified because of the irregularities and objections stated by appellants. To the contrary, it is clearly the Board's duty to refuse to certify the election if it finds *after the hearing* "that any of the assertions made in the petition filed pursuant to this subdivision are correct, or that the election was not conducted properly, or misconduct affecting the results of the election occurred, . . . ." (See Lab. Code, § 1156.3, subd. (c).) For this reason, *Dyestuffs* is inapposite to the instant case.

It is one thing to hold that the determination by the Board that a sufficient interest exists to order an election is not subject to judicial review except later in resistance to an unfair labor charge (see *Nishikawa Farms, Inc. v. Mahony, supra,* 66 Cal.App.3d 781); it is quite another matter to hold that the Board may by administrative ukase determine all issues relative to the election process without according a hearing to the parties if one is properly requested pursuant to the mandatory terms of the statute. I can scarcely think of a right more fundamental than that of a fair hearing before the tribunal which purports to adjudicate a matter having far-reaching consequences to the contestants. Pragmatically, it is apparent to all who are acquainted with the practicalities of the situation that requiring the employer to wait and proceed by way of an unfair labor practice charge and subsequent refusal to bargain, with all its

attendant risks and penalties, is, from the employer's standpoint, equivalent to no remedy at all. At the very least the employer should not be required to suffer the consequences of such a procedure without having had a hearing before the Board on his initial objections. Sometimes the courts tend to forget that the due process clause protects property rights as well as the right to life and liberty. It is perhaps trite but it is essential to remind ourselves that the courts should accord the protections of all constitutional guarantees to all litigants, even in the face of widespread pressure group outcries that tilt sentiment in favor of farm laborers. Such pressures should not blind the courts to basic constitutional provisions or cause them to gloss over specific statutory protections afforded to employers.

Appellants' petition for a hearing by the Supreme Court was denied November 23, 1977. Bird, C. J., did not participate therein. Sullivan, J.,* participated therein. Clark, J., Richardson, J., and Newman, J., were of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.