Filed 11/25/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| WONDERFUL NURSERIES, LLC,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>AGRICULTURAL LABOR RELATIONS<br>BOARD et al.,<br><br>    Defendants and Appellants;<br><br>UNITED FARM WORKERS OF AMERICA,<br><br>    Real Party in Interest and Appellant. | F088515<br><br>(Super. Ct. No. BCV-24-101649)<br><br><br>**OPINION** |
| WONDERFUL NURSERIES, LLC,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>AGRICULTURAL LABOR RELATIONS<br>BOARD et al.,<br><br>    Defendants and Respondents;<br><br>UNITED FARM WORKERS OF AMERICA,<br><br>    Real Party in Interest and Appellant. | F088520<br><br>(Super. Ct. No. BCV-24-101649) |

| | |
|---|---|
| AGRICULTURAL LABOR RELATIONS BOARD et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF KERN COUNTY, <br><br> Respondent; <br><br> WONDERFUL NURSERIES, LLC, <br><br> Real Party in Interest. | F088632 <br><br> (Super. Ct. No. BCV-24-101649) |
| UNITED FARM WORKERS OF AMERICA, <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF KERN COUNTY, <br><br> Respondent; <br><br> WONDERFUL NURSERIES, LLC, et al., <br><br> Real Parties in Interest. | F088639 <br><br> (Super. Ct. No. BCV-24-101649) |

APPEALS from a judgment of the Superior Court of Kern County.  Bernard C. Barmann, Jr., Judge.  ORIGINAL PROCEEDINGS in mandate.

Rob Bonta, Attorney General, Thomas S. Patterson, Assistant Attorney General, Mark R. Beckington, Paul Stein, Sebastian Brady, Nicholas R. Green, and Cristina R. B. López, Deputy Attorneys General, for Agricultural Labor Relations Board et al.

Martínez Aguilasocho Law, Inc., Mario Martínez, Edgar Iván Aguilasocho; Altshuler Berzon, Scott A. Kronland, Corinne F. Johnson and Jonathan Rosenthal for United Farm Workers of America.

Sheppard, Mullin, Richter & Hampton, David A. Schwarz, Barbara E. Taylor and Krista L. Landis for Wonderful Nurseries, LLC.

-ooOoo-

## INTRODUCTION

In early 2024, the United Farmworkers of America (UFW) sought to be certified as the exclusive bargaining representative for the employees of Wonderful Nurseries, LLC (Wonderful), an agricultural company involved in the grape industry in the Central Valley. The UFW utilized a new statutory procedure contained in Labor Code section 1156.37[1] in order to seek certification by filing with the Agricultural Labor Relations Board (ALRB or Board) what is referred to as a "Majority Support Petition" (sometimes referred to by the parties as an MSP), demonstrating that a majority of Wonderful's employees supported unionizing with the UFW as their bargaining representative.

Wonderful vigorously opposes this unionization effort. It filed objections in front of the ALRB as part of the statutory procedure under section 1156.37, making a plethora of claims of impropriety by the UFW in its unionization efforts. Wonderful claims to have submitted a large number of declarations to the ALRB disputing whether various workers were misinformed or misled, and contesting whether the workers actually support the UFW acting as their bargaining representative. The UFW, for its part, allegedly contested the veracity of those declarations, suggesting they were coerced from workers by management.

We use the words "claims" and "allegedly" here because the administrative proceeding in which such contested issues are being raised with the ALRB is not yet before us for review, and, thus, we know neither what the factual findings will be nor what information will be found in the fully developed record. Instead of waiting for the statutorily prescribed time for seeking judicial review—or even waiting for the evidentiary hearings it sought in front of the ALRB to conclude—Wonderful filed a petition in the superior court contesting the validity of the certification decision.

---

[1]Further undesignated statutory citations are to the Labor Code, unless otherwise indicated.

3.

Wonderful asked the superior court to enjoin the certification proceedings, prevent the ALRB from continuing with any administrative proceedings regarding certification of the UFW as the representative for Wonderful's workers, and declare the underlying statute— section 1156.37—unconstitutional.

Wonderful filed this petition notwithstanding approximately 50 years of unbroken precedent finding an employer may not directly challenge a union certification decision in court except in extraordinarily and exceedingly rare circumstances, which Wonderful does not meaningfully attempt to show are present here. Rather, if the employer believes a union has been inappropriately certified as a bargaining representative, its remedy is to refuse to bargain with it. In the normal course of business, claims are then brought against the employer for unfair labor practices. In the context of an unfair labor practice proceeding, the employer can contest the validity of the certification. This procedure has been upheld not only by the courts of this state interpreting California's Alatorre-Zenovich-Dunlap-Berman Agricultural Labor Relations Act of 1975 (§ 1140 et seq.; ALRA or the Act), but by federal courts interpreting the National Labor Relations Act (29 U.S.C. § 151 et seq.; NLRA) on which the ALRA is modeled. This delayed review procedure was created intentionally to avoid labor strikes caused when employers sought to delay union recognition.

Thus, the question we face in this opinion is a preliminary one: whether the trial court had jurisdiction to even consider this challenge at this time, despite statutory mandates funneling judicial review of certification decisions to a later point in time, and even then, to the Court of Appeal in the first instance. Despite apparently recognizing both the statutory mandate and the precedent upholding it, the trial court concluded it did have jurisdiction, and proceeded to issue a preliminary injunction staying the ALRB's ongoing administrative hearings. We previously issued writs of supersedeas staying enforcement of that preliminary injunction. We now conclude, in line with both our Legislature's command and a long judicial history supporting it, that the trial court lacked

4.

jurisdiction to consider this case. We will therefore remand these matters to the trial court with directions to dismiss Wonderful's case.

## BACKGROUND

The instant matters before this court arise out of an effort by the UFW to certify a union at facilities owned and/or operated by Wonderful. UFW filed a so-called Majority Support Petition pursuant to section 1156.37 in February 2024 seeking to be certified as the bargaining representative for Wonderful's agricultural employees. Wonderful filed a response to the petition for certification with the ALRB. Shortly thereafter, Wonderful submitted a letter to the ALRB alleging the UFW was engaged in misconduct in relation to the Majority Support Petition; it submitted declarations from its employees purporting to identify this misconduct. The ALRB responded to Wonderful, noting that due to the redactions, it could not discern whether the declarations were signed, nor whether the declarations were from individuals on the eligibility list forming the underlying basis for the Majority Support Petition. It noted Wonderful's allegations were serious, and pointed Wonderful to section 1156.37, subdivision (f)(1)(D), which allowed for the filing of objections within five days of certification.

The regional director of the ALRB issued the findings of her investigation into the Majority Support Petition on March 1, 2024. She concluded the UFW had submitted 423 authorization cards supporting certification of the UFW as the workers' bargaining representative. Wonderful supplied information indicating 688 individuals were purported to be under its employ during the relevant period. Following various concerns raised by both parties, the regional director added one individual to the employee list who was inadvertently omitted, removed nine individuals who were inadvertently included, removed 33 individuals who were deemed to possess supervisory authority and thus were not properly part of the bargaining unit, and removed seven individuals who lacked a community of interest with the other employees. Additionally, the regional director noted the UFW had submitted 181 additional authorization cards during the investigation.

5.

The regional director concluded the petition met the appropriate criteria, that the UFW had submitted 327 valid authorization cards[2] out of a total of 640 employees who worked during the relevant period, and thus concluded that proof of majority support had been met according to section 1156.37, subdivision (b).  On March 4, 2024, the ALRB approved the results of the regional director's investigation and certified the UFW as the exclusive collective bargaining representative of Wonderful's workers, thus triggering Wonderful's duty to bargain with the UFW pursuant to section 1156.37, subdivision (e).

As permitted by section 1156.37, subdivision (f)(1), Wonderful filed a petition with the ALRB objecting to the certification on March 11, 2024; on the same day, it also filed a motion for stay of the certification with the ALRB, even though there is no obvious statutory authority in section 1156.37 for the ALRB to issue a stay.  Wonderful submitted 16 different objections to the certification, including claims that section 1156.37 is unconstitutional both on its face and as applied.  On March 18, 2024, the ALRB dismissed 10 of those objections in a reasoned decision and set six of the objections for further hearing.  Concerning the constitutional challenges raised, the ALRB dismissed these, noting it "may not declare a statute unconstitutional or refuse to enforce a statute based on a claim of unconstitutionality."  The ALRB's evidentiary hearing on Wonderful's objections began on April 23, 2024.

While the ALRB's administrative proceedings related to Wonderful's objections were ongoing, Wonderful filed a petition for writ of mandate in Kern Superior Court on May 13, 2024, containing seven causes of action claiming the Majority Support Petition process violated Wonderful's due process rights.  Wonderful's petition requested the trial court to "stay the underlying MSP Proceedings," "suspend the legal effect" of the Board's certification of the UFW as the exclusive bargaining representative of

---

[2]We observe the regional director accepted as valid 327 out of 508 authorization cards submitted, indicating the regional director reviewed and excluded numerous cards for reasons that are not presently clear.

Wonderful's workers, and compel the ALRB to "cease and desist from initiating or continuing any proceedings pursuant to section 1156.37." It also sought both preliminary and permanent injunctive relief in the form of a judgment declaring that section 1156.37 violates both the United States and California Constitutions. The specific nature of Wonderful's request was reiterated in its prayer for relief, which noted it sought injunctive relief "restraining the Board from enforcing certification of the UFW vis-à-vis Wonderful," in addition to seeking to prevent the ALRB from continuing forward with any hearings or proceedings related to UFW's certification as the exclusive bargaining representative for Wonderful's employees.

Thereafter, Wonderful filed a motion for preliminary injunction. In opposing the motion for preliminary injunction, both the ALRB and the UFW noted the trial court lacked jurisdiction to consider Wonderful's petition, given the ongoing administrative proceedings and the statutory limitations requiring judicial review of union certification decisions be delayed until a proceeding to enforce an unfair labor practices finding against an employer. Both the ALRB and the UFW also filed demurrers asserting similar arguments.

The trial court overruled the demurrers and granted the preliminary injunction motion, which is currently in front of us on appeal in cases Nos. F088515 and F088520. The court concluded that, under *Nishikawa Farms*, *Inc. v. Mahony* (1977) 66 Cal.App.3d 781, writ review was available because Wonderful had "alleged 'substantial' constitutional claims." It noted "the Labor Code does specifically prescribe that a challenge to a Board decision should be through the appropriate court of appeal," but nevertheless concluded it had jurisdiction to hear the case because "there is a substantial facial challenge to the statutory process" that would render it "improper to require the complaining party to exhaust their administrative remedies." Both the UFW and ALRB appealed the issuance of a preliminary injunction, contending that the trial court lacked jurisdiction to hear the matter. Separate appeals were filed in cases Nos. F088515 and

7.

F088520, which were ordered consolidated for all purposes in case No. F088515 on September 23, 2024.  The UFW and ALRB also sought writs of supersedeas staying enforcement of the preliminary injunction order, which were issued by this court on October 24, 2024.

Additionally, the ALRB filed a petition for a writ of mandate in case No. F088632 on September 12, 2024.  The petition sought to have this court direct the trial court to sustain the demurrers and dismiss the case with prejudice.  We consolidated the F088632 and F088515 matters further for purposes of argument and now issue this opinion addressing all salient matters raised in these several cases.  We conclude the trial court lacked jurisdiction to consider the challenges raised by Wonderful at this juncture, and therefore the case must be dismissed.

**DISCUSSION**

**1.    Legal Standards for Review of Union Certification Decisions**

The ALRA was "enacted in 1975 to fill a long-standing void left by the National Labor Relations Act (NLRA)," which by its terms "excludes agricultural laborers from its definition of 'employees.'"  (*Pasillas v. Agricultural Labor Relations Bd.* (1984) 156 Cal.App.3d 312, 327; see 29 U.S.C. § 152(3) ["The term 'employee' shall include any employee . . . but shall not include any individual employed as an agricultural laborer"].)  California's ALRA is "closely modeled" on the NLRA.  (*Nishikawa Farms*, *Inc. v. Mahony*, *supra*, 66 Cal.App.3d at p. 786.)  "Indeed the entire ALRA is designed to provide agricultural workers with protection of their collective bargaining rights comparable to that provided nonagricultural workers by the NLRA."  (*Tex-Cal Land Management*, *Inc. v. Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 345.)  Thus, by dint of both judicial logic and legislative direction, federal court interpretations of the NLRA provide persuasive guidance in interpreting the ALRA, which are considered binding on the ALRB.  (*International Assn. of Fire Fighters*, *Local 188*, *AFL-CIO v.*

8.

*Public Employment Relations Bd.* (2011) 51 Cal.4th 259, 268; § 1148 ["The board shall follow applicable precedents of the National Labor Relations Act"].)

Before a union may act as the bargaining representative of a group of agricultural workers under the Labor Code, it must be designated as such by a majority of the workers in the bargaining unit. (§ 1156, subd. (a) ["Representatives designated by the submission of authorization cards or other proof of support or selected by a secret ballot by the majority of the agricultural employees in the bargaining unit shall be the exclusive representatives of all the agricultural employees in such unit"].) A union may submit either a petition pursuant to section 1156.3, or a Majority Support Petition pursuant to section 1156.37. The filing of a petition pursuant to section 1156.3 allows the ALRB to hold elections amongst the employees of the bargaining unit, if a "bona fide question of representation exists." (§ 1156.3, subd. (b).) By comparison, a Majority Support Petition must demonstrate to the ALRB that support for designating the union as the bargaining representative already exists, since it must be "supported by a proof of majority support, through authorization cards, petitions, or other appropriate proof of majority support of the currently employed employees." (§ 1156.37, subd. (c).) No such proof is required in the submission of a petition pursuant to section 1156.3. Once received, the ALRB must immediately investigate the Majority Support Petition (§ 1156.37, subd. (e)(1)), and if the submitted proof of majority support is met, "shall immediately certify the labor organization as the exclusive bargaining representative of the employees in the bargaining unit" (§ 1156.37, subd. (e)(3)).

Important consequences flow from this certification decision. In particular, it may be deemed an unfair labor practice for an employer "[t]o refuse to bargain collectively in good faith with labor organizations certified pursuant to the provisions of Chapter 5 (commencing with Section 1156)." (§ 1153, subd. (e).) Indeed, the Majority Support Petition statute notes that "[a]n employer's duty to bargain with the labor organization commences immediately after the labor organization is certified." (§ 1156.37, subd.

9.

(e)(3).)  The occurrence of an unfair labor practice permits the ALRB to issue a complaint against the offending party (§ 1160.2) and make findings and issue orders relating to the alleged unfair labor practice (§ 1160.3).  The ALRB may order the offending party "to cease and desist from such unfair labor practice," and "to take affirmative action, including . . . making employees whole, when the board deems such relief appropriate, for the loss of pay resulting from the employer's refusal to bargain, and to provide such other relief as will effectuate the policies of this part."  (§ 1160.3.)  An employer who commits an unfair labor practice may be penalized up to $10,000 in addition to any remedy ordered by the board.[3]  (§ 1160.10, subd. (a).)

"Any person aggrieved by the final order of the board granting or denying in whole or in part the relief sought may obtain a review of such order in the court of appeal having jurisdiction over the county wherein the unfair labor practice in question was alleged to have been engaged in . . . by filing in such court a written petition requesting that the order of the board be modified or set aside."  (§ 1160.8.)  "Upon the filing of such petition, the court shall cause notice to be served upon the board and thereupon shall have jurisdiction of the proceeding."  (*Ibid*.)  Further, ALRB orders are not immediately self-executing.  After the period in which to challenge the order has expired, if the party has not voluntarily complied with the order, the ALRB may then apply to the relevant superior court for enforcement of its order.  (§ 1160.8.)

Courts have long held there is no direct review of union certification decisions under the NLRA or the ALRA.  (*Boire v. Greyhound Corp.* (1964) 376 U.S. 473, 476–477; *Nishikawa Farms*, *Inc. v. Mahony*, *supra*, 66 Cal.App.3d at pp. 786–788.)  Both the NLRA and the ALRA permit judicial review only of "final orders" of the respective boards.  (29 U.S.C. § 160(f); § 1160.8.)  Union certification decisions have been found by

_____

[3]Certain unfair labor practices not obviously relevant here—specifically those involving discrimination—may be penalized up to $25,000.  (§ 1160.10, subd. (a)(2).)

10.

both state and federal courts not to be such "final orders," thereby allowing for no direct judicial review. (*Boire*, *supra*, at pp. 476–477; *Nishikawa Farms*, *Inc.*, *supra*, at pp. 787–788.) Instead, an employer who wishes to challenge the union certification must typically await an unfair labor practices proceeding against it, such as might occur when it refuses to bargain with the union it claims was inappropriately certified. (*Boire*, at p. 477; *Nishikawa Farms*, *Inc.*, at p. 787.)

"That this indirect method of obtaining judicial review imposes significant delays upon attempts to challenge the validity of Board orders in certification proceedings is obvious. But it is equally obvious that Congress explicitly intended to impose precisely such delays." (*Boire v. Greyhound Corp.*, *supra*, 376 U.S. at pp. 477–478.) This delay in challenging a certification decision prevents employers from engaging in " 'dilatory tactics in representation proceedings' " (*id.* at p. 479) and thereby helps prevent unions from engaging in preemptive striking in order to gain recognition as the bargaining unit (*id*. at p. 478). That the NLRA "on its face" limits judicial review to orders regarding unfair labor practices and does not provide direct judicial review of certification decisions is "a purpose and a construction which its legislative history confirms." (*A. F. of L. v. Labor Board* (1940) 308 U.S. 401, 409.)

The ALRA has been similarly interpreted, and an employer who doubts the certification process of a union may, in the normal course, only challenge that certification during a proceeding for an unfair labor practice after the employer has refused to bargain with the union. (*Nishikawa Farms*, *Inc. v. Mahony*, *supra*, 66 Cal.App.3d at pp. 786–788; see *R & P Growers Assn. v. Agricultural Labor Relations Bd.* (1985) 168 Cal.App.3d 667, 680, fn. 10; *Yamada Brothers v. Agricultural Labor Relations Bd.* (1979) 99 Cal.App.3d 112, 120–121; *Radovich v. Agricultural Labor Relations Bd.* (1977) 72 Cal.App.3d 36, 39.) In other words, at both the state and federal level, the delay imposed on employer challenges to union certification decisions is a feature, not a bug, of how the NLRA and ALRA are intended to function.

11.

Limited exceptions to this general rule have been recognized both in the federal and state courts. The Supreme Court has held that, where the NLRB acts in an "attempted exercise of power that [has] been specifically withheld," and does so in a manner that deprives a protected group under the NLRA of a "right" specifically assured to them by Congress in the NLRA, a district court has jurisdiction over an original suit to prevent this deprivation. (*Leedom v. Kyne* (1958) 358 U.S. 184, 189.) Thus, direct review of a certification decision is permitted where the NLRB has acted "in excess of its delegated powers and contrary to a specific prohibition in the Act." (*Leedom*, *supra*, at p. 188.)

The primary example of how this exception applies comes from *Leedom*. In that case, the Supreme Court was confronted with a statutory provision that prohibited the NLRB, in determining whether a unit was appropriate for collective bargaining, from certifying a unit containing both professional and nonprofessional employees " 'unless a majority of such professional employees vote for inclusion in such unit.' " (*Leedom v. Kyne*, *supra*, 358 U.S. at pp. 188–189.) Thus, the right of professional employees to vote on the inclusion of nonprofessional employees in the same union was a specific protection afforded by the NLRA. In *Leedom*, the NLRB had included both professional and nonprofessional employees in the bargaining unit in question, while "refusing to determine whether a majority of the professional employees" would have voted in support of the same. (*Leedom*, at p. 189.) Thus, the violation of the law was expressly clear from the facts of the case,[4] and said violation specifically harmed a set of individuals for whose protection the NLRA was passed, i.e., professional employees.

Subsequent opinions have noted this exception "is a narrow one, not to be extended to permit plenary district court review of Board orders in certification

---

[4]In fact, the violation was so clear the NLRB did not contest that its order violated the NLRA. (*Leedom v. Kyne*, *supra*, 358 U.S. at p. 187.)

proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law." (*Boire v. Greyhound Corp.*, *supra*, 376 U.S. at p. 481.) As one court has noted, " '[T]o say that there are possible infirmities in an action taken by the Board by reason of an erroneous or arbitrary exertion of its authority in respect of the facts before it is not to conclude that there is jurisdiction in the District Court to intervene by injunction. For such jurisdiction to exist, the Board must have stepped so plainly beyond the bounds of the Act, or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court.' " (*McCulloch v. Libbey-Owens-Ford Glass Co.* (D.C. Cir. 1968) 403 F.2d 916, 917.)

Similarly, section 1160.8 of the ALRA—which again confines judicial review to "final orders" of the ALRB—does not bar "all recourse to the superior court" concerning union certification decisions. (*Gerawan Farming*, *Inc. v. Agricultural Labor Relations Bd.* (2016) 247 Cal.App.4th 284, 305.) "Instead, such recourse has been permitted in exceptional circumstances where the prescribed judicial review process was unavailable or patently inadequate and a significant statutory or constitutional violation was asserted that warranted such redress." (*Ibid.* [collecting cases].) Thus, where the ALRB has violated "a specific and mandatory provision" of the ALRA for which the act "provides no means of redress," a challenge thereto has been held to fall within the equitable powers of the superior court to address. (*Yamada Brothers v. Agricultural Labor Relations Bd.*, *supra*, 99 Cal.App.3d at pp. 122–123.) The exception permitting immediate review of union certification decisions is only available in " 'extraordinary circumstances,' " and courts are "loath to find exceptions to the rule precluding direct review of orders in certification proceedings." (*Agricultural Labor Relations Bd. v. Superior Court* (1996) 48 Cal.App.4th 1489, 1499, 1500.) Instead, "under the statutory scheme the employers' remedy [is] to refuse to bargain with the union and contest the issues in a subsequent unfair labor practice proceeding." (*Id.* at p. 1500.)

13.

"In summary, under both federal and California case law, application of the *Leedom v. Kyne* exception to the general rule against direct judicial review is dependent on three factors, all of which must be present. First, the challenged order must be ' "a 'plain' violation of an unambiguous and mandatory" ' statutory provision. [Citations.] Second, the order must deprive the complaining party of a right assured to it by the statute. [Citations.] Third, indirect review of the order, through an unfair labor practice proceeding, must be unavailable or patently inadequate. [Citations.]" (*Agricultural Labor Relations Bd. v. Superior Court*, *supra*, 48 Cal.App.4th at pp. 1502–1503.)[5]

An example of a situation found to have met these criteria in the context of the ALRA can be seen in *Yamada Brothers v. Agricultural Labor Relations Bd.*, *supra*, 99 Cal.App.3d 112. There, the ALRB was required to make a finding that an employer had failed to bargain in good faith in order to extend an initial certification decision by up to a year. (*Yamada Brothers*, *supra*, at p. 123.) The ALRB did not make the requisite finding of a failure to bargain in good faith but nevertheless extended the certification decision for an additional year. (*Ibid.*) This was clearly erroneous under the statute. Further, other statutory provisions prevented the extension decision from being considered in a later-filed proceeding regarding a failure to bargain by the employer. (*Id.* at pp. 123–124.) The sections concerning preparation of the record did not allow for inclusion of documents related to the extension decision in the record submitted for judicial review, and the extension decision itself was *specifically* inadmissible in a future unfair labor practices proceeding against the employer. (*Ibid.*) Thus, there was no means by which to

---

[5]The superior court presumably believed it had jurisdiction under *Leedom v. Kyne* because it noted that, per statute, Wonderful could not directly challenge an ALRB certification decision, but found it had jurisdiction because Wonderful had alleged a " 'substantial' " constitutional claim. This conclusion was in error. The trial court neither identified nor applied the correct standard for determining when the *Leedom* exception applies, which requires far more than simply allegations of a substantial constitutional claim. Were the exception as the trial court found, it would certainly swallow the rule.

14.

obtain review of the extension decision as part of a future proceeding for an unfair labor practice.[6]

### 2. Application of These Legal Standards Shows the Instant Case Should Be Dismissed

In the case presently before us, Wonderful largely does not address the main body of precedent concerning delayed judicial review of union certification decisions. Wonderful seemingly concedes judicial review of decisions of the ALRB is only available for final orders. It argues, in fact, that union "certification is a 'final' order" of the ALRB, although it does so without citation to any judicial opinion interpreting the ALRA or NLRA and without persuasively distinguishing any of the precedents discussed above finding exactly the opposite. Instead, Wonderful cites to a section of the opinion in *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 171, which held that an administrative order was " 'final' " when it had been " 'formalized and its effects felt in a concrete way by the challenging parties.' " However, that quotation is derived from a discussion by the California Supreme Court on ripeness. Ripeness—a prudential doctrine of jurisprudence intended to prevent courts from issuing advisory opinions regarding disputes that have not yet actually materialized—is not at issue here. The certification process is underway, and hearings are or were proceeding at the time of Wonderful's suit to address Wonderful's objections to the Majority Support Petition. Since Wonderful's suit sought to block the certification process from proceeding, it is

---

[6]It is less obvious whether the employer in *Yamada Brothers v. Agricultural Labor Relations Bd.* met the third criteria, namely, whether the order "deprive[d] the complaining party of a right assured to it by the statute," which was not expressly addressed in the opinion. (See *Agricultural Labor Relations Bd. v. Superior Court*, *supra*, 48 Cal.App.4th at pp. 1502–1503.) However, the relevant statute stated the ALRB "shall determine whether an employer has bargained in good faith with the currently certified labor organization." (§ 1155.2, subd. (b).) The ALRB is *only* permitted to extend the certification if it determines the "employer has not bargained in good faith." (*Ibid.*) The statute therefore at least contemplates a finding about the employer's actions be made by the ALRB. Initial certification decisions, by contrast, require no findings about the employer's good faith or lack thereof.

ripe in this prudential sense, because an actual controversy exists: the certification process is actually occurring, and Wonderful is actually seeking to block it. Indeed, neither the UFW nor the ALRB squarely raises ripeness here. Rather, they raise jurisdictional issues based on the statutory limitations for judicial review imposed by our Legislature and discussed at length above.

Wonderful does at least tangentially interact with the longstanding precedent on this issue by obliquely suggesting it falls within the *Leedom* exception recognized in the case law.[7] However, Wonderful fails to actually address the salient criteria for that exception as articulated by California courts, or explain how it falls within them. Again,

---

[7]Wonderful also passingly suggests it falls within an "exception to exhaustion" recognized by *Fay v. Douds* (2d Cir. 1949) 172 F.2d 720. In *Fay v. Douds*, despite a prior holding of that court limiting review of union certification decisions to unfair labor practice orders, the court found that if the plaintiff alleged a constitutional violation and "[i]f this assertion of constitutional right is not transparently frivolous, it gave the District Court jurisdiction; and, having once acquired jurisdiction, the court might, and should, dispose of all other questions which arose, even though they would not have been independently justiciable." (*Id.* at p. 723.) This opinion, however, has been roundly criticized both by other federal courts. (*Blue Cross & Blue Shield of Michigan v. N.L.R.B.* (6th Cir. 1979) 609 F.2d 240, 244–245 [finding *Fay v. Douds* "is in clear violation of both the expressed Congressional purpose and the principle of exhaustion of administrative remedies," and declining to follow it]; *J.P. Stevens Emp. v. N.L.R.B.* (4th Cir. 1978) 582 F.2d 326, 329 ["We have previously considered *Fay v. Douds* and found it unpersuasive"]; *Squillacote v. Int'l Broth. of Teamsters* (7th Cir. 1977) 561 F.2d 31, 37 ["Later decisions . . . have questioned the continuing viability of *Fay* insofar as it purports to create an exception to the exhaustion requirement for any constitutional claim which is 'not transparently frivolous'" (fn. omitted)]; *Boire v. Miami Herald Publishing Company* (5th Cir. 1965) 343 F.2d 17, 21, fn. 7 ["[T]here is some question whether our prior decisions have recognized this exception [from *Fay v. Douds*], at least where an employer invokes it"].) Even the courts of the Second Circuit have offered doubt as to its continued viability. (*Utica Mutual Insurance Company v. Vincent* (2d Cir. 1967) 375 F.2d 129, 134 [rejecting *Fay v. Douds* argument "even if we assume that case to be still authoritative"]; *Moshlak v. American Broadcasting Co.* (S.D.N.Y. 1976) 423 F.Supp. 774, 778 [noting "questions . . . have been expressed as to the continued validity of the *Fay v. Douds* exception, both in this circuit and in others"].) This court has similarly questioned its viability. (*Agricultural Labor Relations Bd. v. Superior Court*, *supra*, 48 Cal.App.4th at p. 1508.) Given that Wonderful cites *Fay* only in passing and does not develop this argument further, we treat this argument as forfeited. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" 'We are not bound to develop appellants' argument for them' "]; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

this requires showing: (1) a plain " ' "violation of an unambiguous and mandatory" ' statutory provision"; (2) the deprivation by the complaining party of a "right assured to it by the statute"; and (3) that "indirect review of the order, through an unfair labor practice proceeding, [is] unavailable or patently inadequate." (*Agricultural Labor Relations Bd. v. Superior Court*, *supra*, 48 Cal.App.4th at p. 1503.) Wonderful does not direct us to an unambiguous and mandatory statutory provision that was violated; it instead asserts the statute violates its constitutional rights to due process, which can surely be addressed in a later proceeding. Nor does it identify the right assured to it by the ALRA of which it has been deprived.

The only one of these three criteria on which Wonderful touches is whether review is unavailable. However, even then, Wonderful does not argue that review is actually unavailable. Instead, Wonderful argues its ability to obtain judicial review "is not within its control." This argument is not accompanied by authority saying judicial review must be within the sole and complete control of the complaining party, lest the *Leedom v. Kyne* exception apply. It is true the Supreme Court in *Leedom* said, while distinguishing another case, "Here, differently from the *Switchmen's* case [*Switchmen's Union v. Board* (1943) 320 U.S. 297], 'absence of jurisdiction of the federal courts' would mean 'a sacrifice or obliteration of a right which Congress' has given professional employees, for there is no other means, *within their control* . . . , to protect and enforce that right." (*Leedom v. Kyne*, *supra*, 358 U.S. at p. 190, italics added.) This sentence from *Leedom* simply highlights that the professional employees in that case would never be subject to an unfair labor practice proceeding and thus would never have any means to contest the deprivation of their statutorily granted rights. This is not the same as saying the employer must have sole and complete control over the question of when judicial review occurs.

Wonderful does argue the existence of the mandatory mediation and conciliation procedure in the Labor Code, which it refers to as MMC, renders judicial review unavailable. We thus briefly digress into the MMC process. Under the ALRA, when

17.

labor and management fail to successfully reach a collective bargaining agreement (CBA), either can petition the ALRB for an order requiring mandatory mediation and conciliation of their issues. (§ 1164, subd. (a).) After a mediator is appointed and the parties have mediated for at least 30 days, the mediator can certify the mediation process has been exhausted. (§ 1164, subd. (c).) Following such a certification, "the mediator shall file a report with the board that resolves all of the issues between the parties and establishes the final terms of a collective bargaining agreement." (§ 1164, subd. (d).) This mediated CBA is subject to an internal appeal, and either party may petition the ALRB, which may direct the order be modified. (§ 1164.3, subds. (a)–(d).)

Once an order regarding a mediated CBA is finally issued by the ALRB, any party "may petition for a writ of review in the court of appeal or the California Supreme Court." (§ 1164.5, subd. (a).) "If the writ issues, it shall be made returnable at a time and place specified by court order and shall direct the board to certify its record in the case to the court within the time specified." (*Ibid*.) The reviewing court may consider whether the ALRB acted in excess of its power or jurisdiction, whether it has not proceeded in a manner required by law, and whether the order or decision was obtained by fraud or abuse of discretion or violates any rights of the petitioner under the Constitution. (§ 1164.5, subd. (b)(1)–(4).) The mediated CBA remains in force during the pendency of review unless certain conditions are demonstrated by clear and convincing evidence. (§ 1164.3, subd. (f)(3).)

Wonderful's argument that judicial review is unavailable due to the MMC process is nonsensical. The statute setting forth the MMC process clearly states that either party—which therefore includes Wonderful—can seek judicial review after a final order by the ALRB has issued. (§ 1164.5, subd. (a).) Thus, the MMC process *expressly* includes judicial review. Wonderful states passingly that a challenge under section 1164 et seq. may not include the record of the union certification decision but provides no authority showing this is the case. Indeed, the relevant statutory section simply states the

18.

court issuing the writ shall specify when and where it is returnable and "shall direct the board to certify its record." (§ 1164.5, subd. (a).) Presumably, this includes whatever record is necessary to resolve the matters for which the writ issued. Nothing in the statute states the record and review may not include review of union certification decisions, where appropriate.

Wonderful suggests that, because the union may choose not to pursue MMC and the ALRB may choose not to charge it with an unfair labor practice, there may be no opportunity for review of the certification decision. Not only is this pure hypothecation—the parties' briefing indicates both an unfair labor practice proceeding and the MMC process are currently pending, along with hearings on Wonderful's objections to certification —it also is not a persuasive reason to create a new exception. If Wonderful can refuse to bargain with the union following certification *and* not be subjected to either an unfair labor practice charge or a mediated CBA, we struggle to understand what it has to complain about. In such a scenario, it has suffered no concrete or actual harm because it has given up nothing. It has not bargained with the union. It has not voluntarily agreed to any CBA. It cannot be directly penalized for refusing to bargain, because no unfair labor practices proceeding has occurred. And, since no MMC process was pursued, Wonderful would also not be subject to a mediated CBA. These are the sole enforcement mechanisms that make certification of a union relevant. If they are never used against an employer when it refuses to negotiate, it is hard to imagine a case in which the employer would be able to articulate standing. The employer, having successfully ignored the union and suffered no repercussions, would have suffered no concrete injury and any dispute would likely be hypothetical. Regardless, this is not the case here.[8]

---

[8]Wonderful does submit a request for judicial notice of certain documents suggesting the UFW's request for an MMC process has been withdrawn, purportedly because Wonderful advised it would be shutting down its operations of these facilities within the next year. It does

19.

The main thread of Wonderful's argument, and what it spends the bulk of its briefing arguing, is that it should not be subject to administrative exhaustion requirements in order to bring a facial challenge to the constitutionality of a statute, because doing so would be futile since the ALRB has no authority to find a statute unconstitutional. However, this argument quite misses the point. Wonderful's suit is not being dismissed because it failed to exhaust its administrative remedies, although this may also be true. It is being dismissed because it does not challenge a "final order" within the meaning of section 1160.8, which is what authorizes "[a]ny person aggrieved" by a "final order of the board" to "obtain a review of such order."[9] In such a situation, where our Legislature has directed decisionmaking to another body, a suit challenging those decisions falls outside of the jurisdiction of the superior courts except as provided for by statute. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2025)

not appear any party objects to these requests, and we will take judicial notice of exhibits A and B of the request for judicial notice filed by Wonderful on April 1, 2025, as well as the exhibit submitted on April 23, 2025, by the UFW, which is a similar document. However, as stated above, even if we assume the MMC process is not proceeding, we do not see why this would warrant creating a new exception. If Wonderful is shutting down these operations and will not be subject to a mediated CBA, and is also refusing to bargain with the UFW, it is difficult to see how it will be harmed by the union certification decision in a way that cannot be addressed in a future unfair labor practices proceeding.

We decline to take judicial notice of the remaining exhibits submitted by Wonderful in the same request that relate to a different lawsuit filed by Wonderful employees against the UFW and ALRB, as well as yet another lawsuit Wonderful has filed in federal court. Those lawsuits are not relevant to the issues before the court at this time.

[9]This is also why Wonderful's argument that "there is no doubt" it could "have brought a facial constitutional challenge had it not asserted objections in post-certification proceedings before the Board" (italics and boldface omitted) is wrong. If Wonderful filed suit to challenge the certification of the UFW as the bargaining representative of its employees—regardless of whether it was participating in proceedings before the Board—it would *still* not be allowed to proceed, because the suit would be seeking to challenge a nonfinal order of the board within the meaning of section 1160.8.

¶ 3:123.2, p. 34 ["Superior courts lack subject matter jurisdiction in controversies that, by statute, are to be heard by other tribunals"].)**10**

In response to this, Wonderful argues it is not challenging the certification proceeding at all; it is challenging the constitutionality of section 1156.37. We find this unpersuasive, fundamentally incorrect and, frankly, a confusing distinction to attempt to make. Wonderful may well be challenging the constitutionality of section 1156.37, but it is doing so by challenging the certification of the UFW as the bargaining representative for its employees. Were it otherwise, Wonderful would likely lack standing, although that is not a question that we need to reach here.

Moreover, it is plainly apparent from the petition that Wonderful is challenging the specific decision to certify the UFW as the bargaining representative for its workers. Wonderful's petition describes the ongoing certification process in excruciating detail. The petition notes the UFW began collecting signatures from its workers in an effort to file a Majority Support Petition in May 2023. Wonderful claims a specific UFW vice-president led meetings in which "misrepresentations were made to workers to induce them to sign authorization cards." This vice-president signed the Majority Support Petition under penalty of perjury, which purportedly contained further misrepresentations. Wonderful alleges the UFW encouraged Wonderful's employees to forge signatures of other employees. According to Wonderful, the UFW also told employees they were required to sign on to the Majority Support Petition in order to obtain a $600 payment that was already due to them through a program by the United

---

**10**The affirmative defense of failing to exhaust administrative remedies may, of course, still arise later. For instance, the general rule is that " '[a]dministrative agencies must be given the opportunity to reach a reasoned and final conclusion on *each and every issue* upon which they have jurisdiction to act before those issues are raised in a judicial forum.' " (*Hill RHF Housing Partners*, *L.P. v. City of Los Angeles* (2021) 12 Cal.5th 458, 479.) If Wonderful were to raise a new issue when seeking review of the certification order that was not raised with the ALRB, the other parties might reasonably object that Wonderful had failed to exhaust its administrative remedies on that issue.

States Department of Agriculture. Wonderful claims its employees felt harassed, threatened, or intimidated by the UFW.

The petition includes 10 pages of allegations concerning the potential deleterious effects and legal consequences of certification of the UFW as the bargaining unit for Wonderful's employees. These sections of the petition allege variously that both Wonderful and its employees will be subject to any number of evils caused by union certification: they will be compelled to associate with others they dislike (such as the UFW); ironically, that "certification impairs the 'fundamental right' of farm workers to organize and to freely choose their bargaining representative" (boldface and some capitalization omitted); their freedom to contract will be destroyed; their fundamental property interests will be impaired; and they will be forced to contract whether they wish to bargain or not. Wonderful's first cause of action alleges due process requires a right for Wonderful to be heard before the UFW is certified as the union for its employees.

Ultimately, Wonderful's petition requests (1) injunctive relief "restraining the Board from enforcing certification of the UFW vis-à-vis Wonderful"; as well as an order (2) directing the ALRB to "stay the underlying MSP proceedings, *In the Matter of Wonderful Nurseries LLC* (*Employer*), *and United Farm Workers of America* (*Petitioner*), ALRB Case No. 2024-RM-002"; (3) requiring the ALRB to "suspend the legal effect of the 'Certification of Investigation of Validity of Majority Support Petition and Proof of Support' "; and (4) forcing the ALRB to "cease and desist from initiating or continuing any proceedings pursuant to section 1156.37."

In light of this specific and detailed petition, and despite Wonderful's arguments to the contrary, Wonderful clearly challenges the ALRB's decision under section 1156.37 to certify the UFW as the bargaining representative of its employees. Just as the court held in *Nishikawa Farms, Inc.*—that "a certification order under section 1156.3 of the ALRA is not a 'final order' of the board"—we find a certification order under section 1156.37 is not a "final order" of the board. For similar reasons, we therefore conclude

22.

such an order "is not normally subject to judicial review except as it may be drawn in question by a petition for review of an order . . . restraining an unfair labor practice." (*Nishikawa Farms*, *Inc. v. Mahony*, *supra*, 66 Cal.App.3d at p. 788.)  No such order restraining an unfair labor practice has been issued, and therefore this certification order is not subject to judicial review, unless an exception applies.[11]  As above, while Wonderful does argue the *Leedom v. Kyne* exception applies, it fails to make any persuasive showing of the criteria necessary to meet that exception.  It has not shown " ' "a 'plain' violation of an unambiguous and mandatory" ' statutory provision," or that it has been deprived of a "right assured to it by the statute," or that "indirect review of the order, through an unfair labor practice proceeding, [is] unavailable or patently inadequate."  (*Agricultural Labor Relations Bd. v. Superior Court*, *supra*, 48 Cal.App.4th at p. 1503.)  Absent this, we find, based on and in line with the longstanding precedent in this area of law, that the superior court lacks jurisdiction to hear this case.

Wonderful alternatively argues that, even if it *is* challenging the validity of the certification decision, it "is not challenging any specific agency action or the manner in which the agency exercised its authority.  It challenges the source of the putative authority under which the agency acts."  (Italics and boldface omitted.)  This, Wonderful maintains, separates its challenge from other cases:  it is bringing a facial challenge to the constitutionality of section 1156.37, not an as-applied challenge.  Again, we find this

---

[11] This also distinguishes this case from *Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2018) 23 Cal.App.5th 1129, in which this court concluded that it *could* hear a challenge related to the decertification of a union, because it was "inextricably intertwined and virtually indistinguishable" from the unfair labor practices proceeding with which it had been consolidated.  (*Id*. at p. 1223; see *id*. at pp. 1219–1225.)  Indeed, the remedy imposed for the unfair labor practices violation was, specifically, the invalidation of the decertification election.  (*Id.* at p. 1222.)  The facts of that case, which were repeatedly referred to in the opinion as both "unusual" and "unique," are simply inapposite to this case, which does not involve a decertification election or a certification decision which is "inextricably intertwined and virtually indistinguishable" from the remedy for unfair labor practices being simultaneously imposed.  (See *Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.*, *supra*, at pp. 1219–1225.)

23.

unpersuasive. Wonderful cites no authority holding a facial constitutional challenge to a certification decision need not proceed through the standard path for judicial review, whereas an as-applied challenge must.[12] This court has previously observed with approval that one seeking to challenge the constitutionality of a certification proceeding must either proceed through section 1160.8 following a final order of the ALRB, or through the narrow, recognized exception thereto. (*Gerawan Farming*, *Inc. v. Agricultural Labor Relations Bd.*, *supra*, 247 Cal.App.4th at pp. 308–309 [explaining how the plaintiff's claims fell within the recognized exception].) Other courts are in agreement, even where facial constitutional challenges were alleged. (*Squillacote v. Int'l Broth. of Teamsters*, *Local 344*, *supra*, 561 F.2d at p. 40 ["The Union's claim that § 9(b)(3) [of the NLRA] unconstitutionally penalizes the exercise of associational rights is neither an assertion of a clear violation of right nor one that could not be judicially determined if an exception from normal exhaustion requirements is not granted"]; see *Pacific Maritime Ass'n v. National Labor Relations Bd.* (9th Cir. 2016) 827 F.3d 1203, 1210–1212 [concluding the district court lacked jurisdiction over a facial challenge to a nonfinal NLRB ruling on a certification decision because the case did not fall within the *Leedom v. Kyne* exception].) There is no authority supporting the claim that *some* constitutional challenges may be immediately brought to contest union certification decisions, without fitting into a recognized exception.

Wonderful also contends, albeit obliquely, that section 1160.8 violates article VI, section 10 of the California Constitution, which generally grants original jurisdiction to the superior courts. Although the argument is not phrased this directly, we understand Wonderful to be arguing that section 1160.8 is violative of article VI of the California

_____

[12] This case is also obviously distinguishable from structural challenge cases such as *Free Enterprise Fund v. Public Company Accounting Oversight Bd.* (2010) 561 U.S. 477, 490–491, in which the litigants challenged the very existence of the Board itself. As explained at length, Wonderful is challenging the certification decision made by the ALRB, not the existence of the ALRB.

Constitution because it strips the jurisdiction of the superior courts to hear certain causes of action, and does so without other constitutional authority supporting it. However, we have already determined this is *not* what section 1160.8 does in *Gerawan v. Agricultural Labor Relations Bd.*, *supra*, 247 Cal.App.4th at page 303. That case concerned a constitutional challenge on jurisdictional-stripping grounds to section 1164.9, which stated: "No court of this state, except the court of appeal or the Supreme Court . . . shall have jurisdiction to review, reverse, correct, or annul any order or decision of the board." We observed that the California Supreme Court had already upheld the constitutionality of section 1160.8 in *Tex-Cal Land Management*, *Inc. v. Agricultural Labor Relations Bd.*, *supra*, 24 Cal.3d 335. (*Gerawan*, at p. 303.) The ALRB argued in *Gerawan* that, by analogy, section 1164.9 must be constitutional as well. (*Gerawan*, at p. 303.) However, as we previously explained, sections 1164.9 and 1160.8 are distinguishable, because the former clearly and expressly strips jurisdiction from the superior court, whereas section 1160.8 "does not purport to strip the superior court of jurisdiction." (*Gerawan*, at p. 303.) Indeed, as we noted in *Gerawan* and have already discussed above, the two are distinguishable because section 1160.8 "has never been construed as barring all recourse to the superior court." (*Gerawan*, at p. 305.) Wonderful, which cites *Gerawan* extensively in its briefing, presumably recognizes our prior holding on this issue but does not seek to explain why the *Gerawan* decision was wrongly decided.[13]

In closing, we note an almost identical situation was heard by this court almost 50 years ago in *United Farm Workers v. Superior Court* (1977) 72 Cal.App.3d 268. There, the employees of a rose grower, Mount Arbor Nurseries, voted to unionize, and the UFW was certified by the ALRB as the employees' bargaining representative. (*Id.* at p. 270.) No collective bargaining agreement was reached in the first year, and the UFW requested

---

[13]This distinction was also noted in *Communities for a Better Environment v. State Energy Resources Conservation & Development Com.* (2020) 57 Cal.App.5th 786, 806, another case on which Wonderful relies heavily.

an extension of its certification to continue bargaining. (*Ibid.*) Mount Arbor Nurseries filed a declaratory relief action seeking to resolve whether it was required to continue bargaining with the UFW, alleging irregularities with the union elections. (*Ibid.*) The UFW demurred, asserting the court lacked jurisdiction over the declaratory relief action because it challenged union certification. (*Ibid.*) The trial court overruled the demurrer, and the UFW filed a writ petition with this court seeking to determine whether the trial court had jurisdiction to hear the case. (*Ibid.*)

We concluded the trial court lacked jurisdiction, noting that unfair labor practice proceedings were the "basic method of dispute resolution" embodied in both the NLRA and ALRA. (*United Farm Workers v. Superior Court*, *supra*, 72 Cal.App.3d at p. 271.) An unfair labor practice proceeding "also provides the means by which the employer may challenge the propriety of elections conducted by the Board. If the employer feels that the Board has improperly certified a union as the employees' bargaining representative, its remedy is to refuse to bargain with the union, whereupon the Board will initiate unfair labor practice proceedings against it. At this time the validity of the union's claim to represent the employees may be contested. The Act provides that review of the Board's rulings is by the court of appeal." (*Ibid.*)

This court found the ALRB "has exclusive primary jurisdiction over all phases of the administration of the Act as regards unfair labor practices." (*United Farm Workers v. Superior Court*, *supra*, 72 Cal.App.3d at p. 271.) We found this specifically included claims regarding whether a union was appropriately certified: "Whether real parties have a duty to bargain with the UFW is incident under the Act to many possible future unfair labor practices and is inseparable therefrom." (*Id.* at p. 272.) "If every time an incident or condition precedent were involved in an alleged unfair labor practice and any party could first obtain declaratory relief in the superior court instead of from the Board, the Board would be replaced by ad hoc determinations by already overcrowded courts. The legislative effort to bring order and stability to the collective bargaining process would be

26.

thwarted." (*Ibid.*) We noted the same was true of federal district courts under the NLRA. (*United Farm Workers*, *supra*, at pp. 272–273.) We observed exceptions did exist, as discussed in *Nishikawa Farms*, *Inc.* and *Leedom*, but concluded those circumstances did not apply in that case. (*United Farm Workers*, at pp. 273–274.) We stated that "the Legislature, confronted with violence in the fields, sought peace and stability in agricultural relations by adoption of the Act. That Act established a centralized expert agency with a primary jurisdiction over agricultural labor disputes. With limited exceptions not applicable to the facts of this case, the judiciary enters the scene only after the Board has passed on a labor relations question, and then only for limited purposes of review." (*Id.* at pp. 276–277.) Thus, we reversed the trial court and directed it to enter an order sustaining the demurrer without leave to amend. (*Id.* at p. 277.)

Thus, to summarize, decades of precedent from this court, other California courts, and federal courts interpreting an analogous statute show an employer may not challenge a union certification decision outside of an unfair labor practices proceeding, except in unusual circumstances. This is because, under the ALRA, a certification order from the ALRB is not a "final order" within the meaning of section 1160.8. Instead, Wonderful must wait until the prescribed statutory point to challenge certification, of which there are at least two: either after a final order concerning unfair labor practice issues or after the MMC process. Neither has occurred here. Whether Wonderful has a constitutional right to all of the process to which it believes it is entitled must wait for resolution at the appropriate time.[14] Wonderful has not shown it falls within the *Leedom v. Kyne* exception allowing a premature challenge to the certification decision. The superior court therefore lacked jurisdiction to hear the matter.

---

[14]At this point, we take no position on the merits of any of Wonderful's constitutional arguments related to section 1156.37.

27.

## DISPOSITION

For the reasons given above, the order granting a preliminary injunction is reversed. Let a writ issue to the Kern Superior Court directing it to vacate its orders issuing a preliminary injunction and overruling the demurrers in case No. BCV-24-101649, and issue orders denying the preliminary injunction, sustaining the demurrers filed by the UFW and the ALRB, and dismissing the matter for lack of jurisdiction.[15] The UFW and the ALRB shall recover their costs in all matters resolved by this opinion. (See Cal. Rules of Court, rules 8.278, 8.493.)


                                                                    PEÑA, J.

WE CONCUR:



DETJEN, Acting P. J.



FAIN, J.[*]

---

[15]Further leave to amend the petition is not warranted, regardless of the present state of any MMC or unfair labor practice proceedings, because those statutes clearly direct review in the first instance to the Court of Appeal and/or Supreme Court. (See §§ 1160.8, 1164.5.) Obviously, since our decision does not reach the merits of the case, dismissal should be without prejudice to Wonderful raising its due process issues at the appropriate time and in the appropriate proceeding.

[*] Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.